UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL VALADEZ, ET AL., | Case No.15-cv-05433-EDL |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PREEMPTION MOTION** |
| CSX INTERMODAL TERMINALS, INC., | |
| Defendant. | |

Defendant CSX Intermodal Terminals, Inc.'s ("Defendant") moved for summary judgment or summary adjudication, asserting that the claims of Plaintiffs Miguel Valadez, Israel Lux Carrillo, Nora Ledesma, Manuel Ledesma, Anthony Green, Sr., and Eleaquin Temblador ("Plaintiffs") are preempted by the Federal Aviation Administration Authorization Act ("FAAAA") and the federal Truth-in-Leasing ("TIL") regulations. For the reasons discussed below, the motion is DENIED as to FAAAA preemption and GRANTED IN PART AND DENIED IN PART as to TIL preemption.

## I.    BACKGROUND

Defendant, a federally registered motor carrier, provides intermodal transport services to shippers that use railroads to transport freight in and out of California.[1] The portion of the intermodal move that takes place by truck is known as drayage. Defendant's customers request drayage services based on railroads' arrival and departure schedules. Drayage drivers ("Drivers") then drive a truck that is hooked up to a trailer or container (which may or may not contain freight) either (i) from a rail ramp to a location in California, or (ii) from a location in California to a rail ramp for later transport out of state. Hand Decl. ¶ 8.

---

[1] "Intermodal transport" is the combination of at least two different methods of shipment (e.g., rail to truck or rail to ship).

Defendant previously entered contracts with Drivers, whom it categorized as independent contractors.  Defendant did not own its own trucks.  Instead, Drivers owned trucks that they leased to Defendant pursuant to Contractor Operating Lease Agreements ("COLAs").  COLAs provided for compensation per load (i.e., "linehaul"), as well as for other types of reimbursements and accessorial charges and surcharges, such as inside delivery, waiting time, fuel and storage.  Hand Decl. ¶ 22.  On September 15, 2016, Defendant ceased using Drivers, and now uses only third-party trucking companies to conduct drayage.  Id. ¶ 14.

## II.     PROCEDURAL  HISTORY

Plaintiffs initiated this action in Alameda Superior Court on September 30, 2015, and Defendant removed it to this Court under CAFA on November 25, 2015.  Defendant filed a motion to dismiss on January 29, 2016, to which Plaintiffs responded by filing an amended complaint on January 29, 2016.  Thereafter, the Court granted the Parties' stipulations allowing Plaintiffs to file a second and then third amended complaint on March 7, 2016 and March 22, 2016, respectively.  On April 12, 2016, Defendant filed a motion to dismiss the third amended complaint for failure to state a claim.  Before that motion was fully briefed or heard, the Parties filed a stipulation to stay proceedings pending mediation, which the Court granted.  The Parties attended a private mediation before Mark Rudy on September 8, 2016, but the case did not settle, and the Court lifted the stay.

On December 16, 2016, the Court granted the Parties' stipulation allowing Plaintiffs to file a fourth amended complaint, which is the operative complaint.  It brings the following claims based on Defendant's alleged misclassification of its Drivers as independent contractors rather than employees:  (i) reimbursement of business expenses (California Labor Code Section 2802); (ii) unlawful deductions from wages (California Labor Code Section 221); (iii) failure to provide off-duty meal periods (California Labor Code Sections 226.7 and 512); (iv) failure to provide off-duty paid rest periods (California labor Code Section 226.7); (v) failure to pay minimum wage (California Labor Code Sections 1182.11, 1194); (vi) failure to timely provide wage statements (California Labor Code Section 226); (vii) violation of the California Unfair Competition Law; and (viii) PAGA.

Defendant filed this preemption motion on December 22, 2016, and the Court held a hearing on March 7, 2017. During the hearing, the Court requested supplemental briefs regarding the TIL Regulations, which the Parties filed on March 10, 2017.

## III.    LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corporation v. Catrett, 477 U.S. 317, 327 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"). If the moving party satisfies this initial burden, the non-moving party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. "Only disputes over facts that might affect the outcome of the suit under governing law" are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## IV.    DISCUSSION

There are three types of preemption:  (i) express preemption, in which Congress expressly states that a federal law preempts certain types of state legislation; (ii) field preemption, in which Congress fully occupies the field it has chosen to regulate; and (iii) conflict preemption. See Serv. Eng'g Co. v. Emery, 100 F.3d 659, 661 (9th Cir. 1996). Defendant contends that Plaintiffs' claims are preempted by the FAAAA under the doctrine of express preemption, and that they are preempted by the TIL Regulations under the doctrine of conflict preemption.

### A.    FAAAA

The FAAAA prohibits states from enacting or enforcing laws "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Although "[t]he phrase 'related to,' . . . embraces state laws having a connection with or reference to carrier 'rates, routes, or services,' whether directly or indirectly[,]" the FAAAA "does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." Dan's City Used Cars, Inc. v. Pelkey, 133 S. Ct. 1769, 1778 (2013) (citations omitted). The FAAAA was inspired by the Airline Deregulation Act

("ADA"), whose purpose was "to ensure that States would not undo federal deregulation with regulation of their own." Rowe v. New Hampshire Motor Transp. Ass'n, 552 U.S. 364, 368 (2008). Like the ADA, the FAAAA was intended to "help[] ensure transportation rates, routes, and services that reflect maximum reliance on competitive market forces, thereby stimulating efficiency, innovation, and low prices, as well as variety and quality. Id. at 371 (quotations omitted). "Courts . . . construe[] the [ADA and FAAAA] in pari materia and . . . cite[] precedents concerning either act interchangeably[.]" DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 86 n.4 (1st Cir. 2011), cert. denied, 132 S. Ct. 761 (2011).

In Dilts v. Penske Logistics, LLC, 769 F.3d 637 (9th Cir. 2014), cert. denied, 135 S. Ct. 2049 (2015), the Ninth Circuit held that the FAAAA does not preempt California Labor Code claims. There, employee delivery truck drivers brought a putative class action against their employer, a motor carrier, alleging that the employer violated California meal and rest break laws. The court reviewed the statutory history of the FAAAA in depth, observing:

> The sorts of laws that Congress considered when enacting the FAAAA included barriers to entry, tariffs, price regulations, and laws governing the types of commodities that a carrier could transport. H.R. Conf. Rep. No. 103–677, at 86 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1758. The FAAAA expressly does *not* regulate a state's authority to: enact safety regulations with respect to motor vehicles; control trucking routes based on vehicle size, weight, and cargo; impose certain insurance, liability, or standard transportation rules; regulate the intrastate transport of household goods and certain aspects of tow-truck operations; or create certain uniform cargo or antitrust immunity rules. 49 U.S.C. § 14501(c)(2), (3). This list was "not intended to be all inclusive, but merely to specify some of the matters which are not 'prices, rates or services' and which are therefore not preempted." H.R. Conf. Rep. No. 103–677, at 84, *reprinted in* 1994 U.S.C.C.A.N. at 1756. Accordingly, Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services.

Id. at 644.

The Ninth Circuit concluded that, in light of this congressional intent:

> [G]enerally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted, even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide. Such laws are not preempted even if they raise the overall cost of

doing business or require a carrier to re-direct or reroute some equipment.

Id. at 646.

Accordingly, it held that "California's meal and rest break laws plainly are not the sorts of laws 'related to' prices, routes, or services that Congress intended to preempt." Id. at 647. This is because "[t]hey do not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or indirectly." Id. Instead, "they are broad laws applying to hundreds of different industries with no other forbidden connection with prices, routes, and services." Id. (citation omitted). "They are normal background rules for almost *all* employers doing business in the state of California." Id.

Dilts controls this case and requires the conclusion that the FAAAA does not preempt Plaintiffs' claims. Although Defendant contends that Dilts was wrongly decided, Mot. at 16, this Court is bound to follow it.

Defendant also argues that Dilts is inapplicable because there all parties agreed that the plaintiffs were employees, whereas here Defendant contends that Plaintiffs were independent contractors. This is a distinction without a difference; Plaintiffs here, like the plaintiffs in Dilts, have brought claims under the California Labor Code. The laws that Plaintiffs seek to enforce are similarly "generally applicable background regulations" that "apply[] to hundreds of different industries with no other forbidden connection with prices, routes, and services." See Dilts, 769 F.3d at 646.[2] In addition, Defendant asserts that "Dilts is distinguishable because parties to that case were in an employee/employer relationship, and were not parties to a contract[,] [but] [u]nder U.S. Supreme Court precedent, the presence of a contract between the parties is important to the preemption analysis." Reply at 3 (citing Ginsberg, 134 S. Ct. at 1426). Although not entirely clear, Defendant seems to contend that preemption is more likely to exist where parties have entered a contract and less likely to exist where they have not. Even if true, Dilts is not

---

[2] Defendant makes similar arguments regarding Californians For Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184 (9th Cir. 1998), in which the Ninth Circuit held that the FAAAA did not preempt California's minimum wage law. See Mot. at 15-16 (arguing that Mendonca does not control because it was wrongly decided and did not involve independent contractors). These arguments are also unpersuasive.

distinguishable on this basis because the parties there presumably were, in fact, parties to an employment contract. Cf. Dilts v. Penske Logistics LLC, 819 F. Supp. 2d 1109, 1111 (S.D. Cal. 2011), rev'd and remanded, 769 F.3d 637 (9th Cir. 2014) (defendant was employer that "hired" plaintiff employees).

As Plaintiffs point out, judges in this and other district courts, as well as the California Supreme Court, have held that claims arising out of independent contractor misclassification are not preempted by the FAAAA. Villalpando v. Exel Direct Inc., No. 12-CV-04137-JCS, 2015 WL 5179486, at *29 (N.D. Cal. Sept. 3, 2015) ("reject[ing] defendant's assertion that . . . Plaintiffs' claims are preempted because they would have the effect of requiring it to adopt a business model based on the use of employees" and instead concluding that defendant "may adopt whatever business model it wishes. What it cannot do is treat its drivers as employees while avoiding California's wage and hour rules by requiring its drivers to enter into a contract that simply *calls* the drivers independent contractors."); Robles v. Comtrak Logistics, Inc., No. 2:13-CV-00161-JAM-AC, 2014 WL 7335316, at *7 (E.D. Cal. Dec. 19, 2014) (reaching same conclusion); Taylor v. Shippers Transp. Exp., Inc., No. CV 13-02092 BRO PLAX, 2014 WL 7499046, at *9 (C.D. Cal. Sept. 30, 2014) (same); People ex rel. Harris v. Pac Anchor Transp., Inc., 59 Cal. 4th 772, 787 (2014) (same).

In Villalpando, a class of drivers who provided delivery services for Excel, a motor carrier company, alleged that they had been misclassified as independent contractors, instead of employees. 2015 WL 5179486, at *1, 2. Excel argued that the drivers' claims would "have the effect of requiring that Excel reclassify its drivers as employees." Id. at *25. It therefore argued that applying the California independent contractor test would "alter the manner in which it provides transportation services to its customers and impose the state's own public policies or theories of competition on the operation of a motor carrier -- a result that is impermissible under the FAAAA preemption clause." Id. The court rejected that argument, finding that plaintiffs' claims would not require Excel to choose one business model over another, but instead would simply require Excel to properly categorize its workers. 2015 WL 5179486, at *25. The judge looked to decisions from a federal district court and California Supreme Court that had reached the

6

same conclusion in cases with similar contexts.  Id. at *26.  He noted that, in Robles, the court found drayage delivery drivers' independent contractor misclassification claims were not preempted by the FAAAA because they "merely sought to 'hold [the defendant] accountable for its obligation for its obligation to properly classify its drivers." Id. at *26 (quoting Robles, 2014 WL 7335316, at *4).  Likewise, the judge observed that, in Harris, the California Supreme Court concluded that the State's UCL action was "simply asserting that the defendant must classify the drivers appropriately and comply with generally applicable labor and employment laws." Id. at *26 (citing Harris, 59 Cal.4th at 785).

The Harris court found support for its conclusion that California's independent contractor laws were not preempted by the FAAAA in the legislative history of the FAAAA.  Specifically, the Court noted that several of the states that Congress identified at the time that it enacted the FAAAA as not having laws regulating interstate trucking in fact had generally applicable laws governing when a worker is an independent contractor (or the equivalent) and when a worker is an employee.  Harris, 59 Cal.4th at 786.  This implies that Congress did not intend for the FAAAA to preempt this type of law.

Like the defendants in Villalpando, Robles, and Harris, Defendant here argues that Plaintiffs' wage and hour claims would have required Defendant to classify Drivers as employees, in effect prohibiting it from using independent contractors.  See Mot. at 8 ("Retroactively reclassifying Plaintiffs would be tantamount to having barred CSXIT from using independent contractors"); see also id. at 4, 17.  But Defendant "may use independent contractors or it may use employees; Plaintiffs simply seek to apply generally applicable wage and hour laws based on the policy that [Defendant] has chosen to apply with respect to its drivers." Villalpando, 2015 WL 5179486, at *25.  Because Defendant may adopt any business model it wishes so long as it complies with California's generally applicable wage and hour laws, Plaintiffs' claims are not preempted by the FAAAA. Id. at *29.

Defendant attempts to distinguish this case from those Villalpando, Robles, and Harris, as well as from Dilts, based on the fact that here, Defendant has offered evidence that compliance with California wage and hour laws would have imposed significant burdens.  Hand Decl. ¶¶ 23-

41; see also Reply at 3 ("application of California wage law would (1) reduce CSXIT's responsiveness and flexibility for customer demand, (2) cause CSXIT to incur the costs of purchasing a fleet of trucks, which CSXIT had never done previously, (3) require CSXIT to hire numerous employees that it need not otherwise hire, (4) force CSXIT to engage in extensive route planning studies to ensure the feasibility of providing timely meal and rest periods, and (5) cause CSXIT to pass these costs directly onto its customers, thereby increasing rates").

This argument is not persuasive. First, under Dilts, it is not clear that as-applied preemption challenges are permissible. Dilts, 769 F.3d at 648 n.2 ("We recently noted that it was an 'open issue' 'whether a federal law can ever preempt state law on an 'as applied' basis, that is, whether it is proper to find that federal law preempts a state regulatory scheme sometimes but not at other times, or that a federal law can preempt state law when applied to certain parties, but not to others.'" (quoting Cal. Tow Truck Ass'n v. City of San Francisco, 693 F.3d 847, 865 (9th Cir. 2012)). Even assuming such challenges are permissible, Defendant's evidence that compliance with California wage and hour laws would have required it to classify all workers as employees (which, it asserts, would have imposed costs and forced it to change its routes and rates) is contradicted by the fact that, in September 2016, Defendant terminated its relationships with Drivers, and now provides its customers the same drayage services through a third party company. Hand Decl. ¶ 14. In other words, Defendant's speculation about what might have happened had it been required to comply with California law is belied by what did, in fact, happen.

Finally, even if Defendant were not free to hire independent contractors, and were, in fact, required to hire employees, the evidence that Defendant presents regarding the attendant burdens is the same type of evidence that the Dilts, Villalpando, Robles, and Harris courts rejected. Defendant argues that compliance would necessarily reduce its responsiveness and flexibility for customer demand. However, although Defendant "may have to hire additional drivers or reallocate resources in order to maintain a particular service level, [it] remain[s] free to provide as many (or as few) services as [it] wish[es]." Dilts, 769 F.3d at 648. Defendant also asserts that compliance would force it to incur additional costs (e.g., cost of purchasing trucks), and that these costs would impact its prices. The Dilts court, however, found that increased costs of doing

8

business do not trigger preemption.  Id.  Defendant contends that compliance would force it to restructure its routes.  But the Dilts court found that altering routes does not amount to the sort of "route control" Congress sought to preempt.  Id. at 649 ("Indeed, Congress has made clear that even more onerous route restrictions, such as weight limits on particular roads, are not 'related to' routes and therefore not preempted.").[3]

The cases that Defendant cites in support of its position are distinguishable.  Ortega v. J.B. Hunt Transp. Inc., No. CV 07-08336 BRO SHX, 2014 WL 2884560, at *1 (C.D. Cal. June 4, 2014),[4] decided before Dilts, held that the FAAAA preempted California state minimum wage laws.  2014 WL 2884560, at *6.  As Judge Illston pointed out in Ridgeway v. Wal-Mart Stores, Inc.:

> [Ortega] was issued before that court had the benefit of the Ninth Circuit's guidance in Dilts. Since Dilts, the same judge who previously found FAAAA preemption in Ortega has ruled in another case that the FAAAA did not preempt the plaintiff truck drivers' claims under the California Labor Code, including minimum wage claims, in light of Dilts. See Taylor v. Shippers Transp. Exp., Inc., No. 13-cv-2092-BRO, 2014 WL 7499046, at *2, 8-9 (C.D. Cal. Sept. 30, 2014).

No. 08-CV-05221-SI, 2016 WL 4529430, at *7 (N.D. Cal. Aug. 30, 2016).  Judge Illston therefore "decline[d] [the defendant's] invitation to follow the Central District of California's lead in Ortega[,]" holding instead that the FAAAA did not preempt truck drivers' minimum wage claims. Id.

The Supreme Court cases that Defendant cites were also decided before Dilts and are consistent with it.  Both Northwest, Inc. v. Ginsberg, 134 S. Ct. 1422 (2014) and Am. Airlines, Inc. v. Wolens, 513 U.S. 219 (1995) held that state prohibitions on airlines' adjustments to frequent flyer accounts were preempted by the ADA.  The Dilts court summarized the Ginsberg holding as follows:

---

[3] Plaintiffs object to Paul Hand's declaration regarding these burdens based on lack of foundation, and Defendant objects to Plaintiffs' declarations regarding the absence of these burdens based on hearsay, relevance, and lack of foundation.  The Court need not reach these objections because Plaintiffs would still prevail in defeating summary judgment even if the Court were to decline to consider Plaintiffs' evidence consider Defendant's evidence.

[4] Ortega has been appealed to the Ninth Circuit.

> The Court held that, because frequent flyer credits could be redeemed for services offered for free or at reduced prices, the state law contract claim met the "related to" test, *id.,* and, because the state law claim sought to enlarge the contractual relationship that the carrier and its customer had voluntarily undertaken, was preempted under the Airline Deregulation Act

Dilts, 769 F.3d at 646.

The Dilts court also considered Rowe v. New Hampshire Motor Transp. Ass'n, 552 U.S. 364 (2008), and Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992):

> *Rowe* instructs us to apply to our FAAAA cases the settled preemption principles developed in Airline Deregulation Act cases, including the rule articulated in *Morales* that a state law may "relate to" prices, routes, or services for preemption purposes even if its effect is only indirect, but that a state law connected to prices, routes, or services in "too tenuous, remote, or peripheral a manner" is not preempted[.]

Dilts, 769 F.3d at 645 (citations omitted). The Ninth Circuit followed this rule and concluded that California's wage and hour laws were too tenuous to be preempted.

The First Circuit cases that Defendant cites are nonbinding and inapposite. Schwann v. FedEx Ground Pkg. Sys., Inc., 813 F.3d 429 (1st Cir. 2016); Remington v. J.B. Hunt Transp. Inc., No. 15-1252, Slip Op. at *2 (1st Cir. Feb. 22, 2016); Massachusetts Delivery Ass'n v. Healey, 821 F.3d 187, 192 (1st Cir. 2016). These cases held that the Massachusetts Independent Contractor Statute test, which mandated that an independent contractor's service be performed outside the usual course of business, was preempted by the FAAAA because the test "require[d] a judicial determination of the extent and types of motor carrier services that FedEx provides" and could thereafter bar a defendant from using independent contractors. Schwann, 813 F.3d at 437-438.

The Villalpando court considered the import of these First Circuit cases, concluding that the Massachusetts test was unique in that it "abrogated the traditional common law control test that had been followed in Massachusetts and which is also the test in California." Villalpando, 2015 WL 5179486, at *27. Where plaintiffs instead "simply rely on California's well-established test for independent contractors to assert claims under general wage hour laws that the Ninth Circuit has already found are not preempted in Dilts and Mendonca," those claims are not preempted. See Villalpando, 2015 WL 5179486, at *27-28.

Accordingly, the FAAAA does not preempt Plaintiffs' claims.

### B.     TIL Regulations

Defendant contends that the TIL Regulations preempt Plaintiffs' claims under the doctrine of conflict preemption.  Conflict preemption exists when either:  (i) a state law indirectly conflicts with a federal law because it interferes with the objectives of the federal law or is an obstacle to the accomplishment of the federal purpose ("indirect preemption" or "obstacle preemption"); or (ii) a state law directly conflicts with a federal law because it is impossible to comply with both ("direct preemption" or "impossibility preemption").  See Sprietsma, 537 U.S. at 64.

In order to determine whether indirect preemption exists, the court must determine the purpose of the federal law and whether that purpose is affected by the operation of the state law. See Sprietsma, 537 U.S. at 64.  Here, as Plaintiffs point out, "[a] primary goal of [the TIL Regulations] is to prevent large carriers from taking advantage of individual owner-operators due to their weak bargaining position."  Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ), 367 F.3d 1108, 1110 (9th Cir. 2004); see also Fox v. Transam Leasing, Inc., 839 F.3d 1209, 1215 (10th Cir. 2016) ("Congress's substantive purpose in authorizing the [TIL] Regulations was to protect independent truckers, to remedy disparities in bargaining positions between independent owner operators and motor carriers, to address many of the inequities in the lessor/lessee relationship between carriers and independent truckers, and to eliminate or reduce opportunities for illegal or inequitable practices by motor carriers" (citations omitted)).

The TIL Regulations accomplish this goal by "compel[ling] disclosure of the contract terms between the owner-operators and the carriers, not [by] govern[ing] the terms for which the parties are permitted to bargain."  Renteria v. K&R Transportation, Inc., No. 98 CV 290 MRP, 1999 WL 33268638, at *3 (C.D. Cal. Feb. 23, 1999); see also Tousley v. North Am. Van Lines, Inc., 752 F.2d 96, 101 (4th Cir. 1985) (purpose of regulations was "to ensure truth-in-leasing by fostering disclosure [in leases]"); Lease & Interchange of Vehicles, 129 M.C.C. 700, 702 (I.C.C. 1978) ("The major aim of [the TIL Regulations] is to accomplish a fair measure of truth-in-leasing, a full disclosure of the benefits and obligations of leasing arrangements between owner-operators and regulated carriers.").  The California Labor Code, which was also intended to protect workers, does not impede accomplishment of the purpose of the TIL Regulations.

Defendant argues nonetheless that the purpose of the TIL Regulations is to provide drivers and motor carriers with "absolute freedom to negotiate." It contends that the mere silence of the TIL Regulations as to certain terms, such as payment of minimum wage and provision of meal and rest breaks, shows that the ICC intended that drivers and motor carriers be free to negotiate any terms that they saw fit.

However, the cases on which Defendant relies do not elevate mere silence into a prohibition. In <u>Remington</u>, the court considered whether a Massachusetts statute that *prohibited* motor carriers from passing expenses associated with equipment leases onto the drivers conflicted with 49 C.F.R. Section 376.12(e), which *expressly permits* the drivers and motor carriers to negotiate the allocation of these business expenses. <u>Remington v. J.B. Hunt Transp., Inc.</u>, No. CV 15-10010-RGS, 2016 WL 4975194, at *4 (D. Mass. Sept. 16, 2016). The court concluded that 49 C.F.R. Section 376.12(e) preempted the Massachusetts statute because the state law had "forbidden" that which the federal regulations had "explicitly permitted." <u>Id.</u>

Indeed, the <u>Remington</u> court rejected the defendant's argument that the TIL Regulations could, simply by their silence, preempt state wage and hour laws. <u>See id.</u> at *5 (no preemption regarding accrued vacation or sick leave because "*[t]he regulations are silent . . .* with respect to [such] potential employment benefits" (emphasis added)). Thus, under <u>Remington</u>, where the TIL Regulations *explicitly permit* a particular arrangement, state laws cannot prohibit parties from negotiating that arrangement, but where the TIL Regulations are silent, state laws can prohibit parties from freely negotiating that term or arrangement.

Similarly, the other cases that Defendant cites considered whether state insurance laws that *prohibit* the charge-back of insurance costs to employees conflict with 49 C.F.R. Section 376.12(j), which *expressly permits* these charge-backs. Several courts have concluded that preemption exists in this context. For example, the <u>Rodriguez</u> court stated:

> [I]f state insurance laws prohibit [the motor carrier] from charging back its liability insurance costs to its drivers, those laws are preempted by 49 C.F.R. section 376.12. As we have said, 49 C.F.R. section 376.12 permits motor carriers to charge back liability insurance costs to its drivers, so long as the amounts of those chargebacks are clearly specified. In contrast, if California insurance law is interpreted as plaintiffs suggest, it would *forbid* such

> chargebacks unless the motor carriers were licensed to sell insurance. Thus, under plaintiffs' interpretation of California law, it would prohibit precisely the kind of chargebacks that federal law permits.

Rodriguez v. RWA Trucking Co., Inc., 238 Cal. App. 4th 1375, 1393-94 (2013), as modified (Sept. 20, 2013); see also Owner-Operator Ind. Drivers Ass'n, Inc. v. United Van Lines, LLC, 556 F.3d 690, 697 (9th Cir. 2009) (also analyzing insurance chargebacks); Owner-Operator Ind. Drivers Ass'n, Inc. v. Bulkmatic Transport Co., 503 F. Supp. 2d 961, 967 (N.D. Ill. 2007) (same).

Again, these cases involve situations where state laws prohibit what federal regulations permit, and they do not support Defendant's argument that the overarching purpose of the TIL Regulations is to guarantee that carriers and owners have absolute freedom to negotiate any and all terms of their leases without regard for state wage and hour laws. Because the primary purpose of the TIL Regulations is to protect drivers by ensuring full disclosure in leases, and not to allow drivers and motor carriers complete negotiating freedom, the California Labor Code does not interfere with the objectives of the TIL Regulations and is not an obstacle to the accomplishment of their purpose.[5]

Direct preemption occurs when compliance with the California Labor Code in the manner that the Plaintiffs request would violate the TIL Regulations. See PLIVA, Inc. v. Mensing, 564 U.S. 604, 620 (2011). Further, as discussed above, Plaintiffs' claims are also preempted if the California Labor Code prohibits activities that the TIL Regulations permit. See Rodriguez, 238 Cal. App. 4th at 1391. The issue of such preemption varies as to Plaintiffs' specific California Labor Code claims.

---

[5] Defendant does not, and could not, argue that the TIL Regulations were intended to require that drivers be classified as independent contractors, since 49 C.F.R. Section 376.12(c)(1) expressly declines to take a position on employment status:

> Nothing in the provisions required by paragraph (c)(1) of this section [which provides that the motor carrier shall have exclusive possession, control, and use of the equipment for the duration of the lease] is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative requirements.

49 C.F.R. § 376.12(c)(4).

### 1.  California Labor Code § 2802

Plaintiffs allege that Defendant violated California Labor Code Section 2802 by failing to reimburse drivers for necessary employment-related expenses.  Section 2802 provides, "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties[.]"  Cal. Labor Code § 2802(a).  Plaintiffs allege:

> While acting on the direct instruction of Defendants and discharging their duties for them, Plaintiffs and similarly situated Class Members have incurred work-related expenses.  Such expenses include but are not limited to the purchase and/or lease of vehicles; fuel, maintenance, and other vehicle operating costs; costs of replacing and/or upgrading tractors with more energy efficient and less polluting vehicles . . . ; various forms of insurance; cellular telephone and applications required for receiving dispatch assignments and tracking progress; escrow funds; and for cargo and equipment losses and damages.  Plaintiffs and Class Members incurred these substantial expenses and losses as a direct result of performing their job duties for Defendants.  Defendants have failed to indemnify or in any manner reimburse Plaintiffs and similarly situated Class Members for these expenditures and losses.  By requiring those employees to pay expenses and cover losses that they incurred in direct consequence of the discharge of their duties for Defendants and/or in obedience of Defendants' direction, Defendants have violated and continue to violate Labor Code § 2802.

Am. Cmpl. ¶¶ 42-43.

Defendant contends that Plaintiffs' Section 2802 reimbursement claims are preempted by 49 C.F.R. Section 376.12(d), (e), (i), and (j).  Defendant is largely correct.  Plaintiffs cannot seek reimbursement for the expenses associated with acquiring and/or maintaining vehicles because these claims are preempted by 49 C.F.R. Sections 376.12(c)(1) and (d), which expressly contemplate that carriers and drivers will enter leases whereby the drivers provide their vehicles to the carriers.  See 49 C.F.R. § 376.12(c)(1) ("The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease."); id. § 376.12(d) ("The compensation stated on the lease . . . may apply to equipment and driver's services either separately or as a combined amount.").

In addition, Plaintiffs cannot seek reimbursement for fuel and maintenance because these claims are preempted by 49 C.F.R. Section 376.12(e), which expressly permits carriers and drivers

to enter leases that allocate these expenses to the drivers.  See id. § 376.12(e) ("The lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items.").  Similarly, Plaintiffs' claims for insurance reimbursements are preempted by 49 C.F.R. Section 376.12(j)(1).  See id. § 376.12(j)(1) ("The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage . . . If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor."); Rodriguez, 238 Cal. App. 4th at 1393-94.

Plaintiffs' claim for cargo and property damage is preempted by 49 C.F.R. Section 376.12(j)(3), which permits leases to specify conditions under which deductions for such damage may be made from the driver's settlements.  Plaintiffs' claim for escrow funds is preempted by 49 C.F.R. Section 376.12(k), which permits leases to provide for escrow funds.

However, Plaintiffs' claims for cellular telephone and applications required for receiving dispatch assignments and tracking progress are not preempted by 49 C.F.R. Section 376.12(i). This regulation requires leases to specify that drivers are "not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement."  49 C.F.R. § 376.12(i).  The regulation does not expressly permit drivers and carriers to allocate cellular telephone and application expenses as they see fit; to the contrary, it states that drivers *cannot* be required to purchase or rent products (presumably including cellular telephones).

Plaintiffs argue that these TIL Regulations are merely disclosure and documentation requirements that require leases to specify which parties are responsible for which expenses.  They contend that the only substantive TIL Regulation is Section 376.12(j)(1) (regarding liability insurance charge-backs), as evidenced by the fact that (j)(1) provide that carriers "will" make liability insurance charge-backs, whereas other TIL Regulations, such as Section 376.12(h), provide that carriers "may" make other charge-backs. Pl.'s Supp'l Brief at 4 n.3 (citing Rodriguez, 238 Cal. App. 4th at 1393-94 and Fox, 839 F.3d at 1217-18).  Thus, Plaintiffs

conclude, "376.12(j)(1) is the exception that proves the general rule, i.e., that the TIL regulations do not affirmatively permit certain contract terms but rather promote disclosure of key financial terms." Id. In other words, according to Plaintiffs, the word "will" indicates that liability insurance charge-backs are mandatory under (j)(1) (and thus state laws to the contrary are preempted), whereas the word "may" indicates that other charge-backs are only permissible so long as they are not prohibited by state law. However, the difference between "will" and "may" is not dispositive because the last sentence of (j)(1) provides in full, "*If* the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor," 49 C.F.R. § 376.12(j)(1) (emphasis added), and thus, like 376.12(h), contemplates that the authorized carrier may make a charge-back, but is not required to.

In addition, Fox, which Plaintiffs cite for the proposition that the TIL Regulations are purely disclosure requirements, undermines their argument that (j)(1) is the only substantive regulation. In Fox, three drivers brought a putative class action against a motor carrier, alleging that the carrier violated 49 C.F.R. Section 376.12(i) by requiring the drivers to pay it $15 each week to use its satellite communications system. 839 F.3d at 1211. The motor carrier argued that the $15 usage fee was permitted under subsection (h), which provides that "the lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation," and thus that the motor carrier was not liable. The Fox court rejected this argument, stating:

> [Section] 376.12(i) provides, in part, a substantive restriction on the terms a carrier can include in its lease with independent truckers. Section 376.12(h), on the other hand, imposes disclosure and documentation requirements for fees that the carrier may permissibly deduct from the compensation it owes a trucker.

Fox, 839 F.3d at 1214. The court's description of TIL Regulations as imposing only "disclosure and documentation requirements" thus applied to subsection (h), not to other TIL Regulations. Further, the court did not conclude that subsection (i) was the only substantive TIL Regulation, and that all other TIL Regulations pertained only to disclosure and documentation; indeed, it contemplated that other substantive Regulations existed (although it didn't discuss them): "An

16

item may be deducted if the terms of the lease so provide and the deduction does not violate *any other substantive truth-in-leasing regulation (such as § 376.12(i))*[.]" Id. at 1216 (emphasis added).

Accordingly, Plaintiffs' Section 2802 claims for reimbursement of vehicle acquisition and maintenance expenses, fuel and other operator costs, cargo and equipment losses, insurance, and escrow funds are preempted, but their claim for reimbursement of cellular telephone and application expenses is not preempted.

### 2. California Labor Code § 221

Plaintiffs allege that Defendant violated California Labor Code Section 221 by making unlawful deductions from Plaintiffs' wages. Section 221 provides, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Cal. Labor Code § 221. Plaintiffs allege that Defendant has violated this section

> by unlawfully taking deductions from Plaintiffs' and Class Members' compensation to cover certain ordinary business expenses of Defendant, including but not limited to, payment for cargo equipment loss and damage and escrow account payments.

Am. Cmpl. ¶ 51.

Defendant contends that Plaintiffs' Section 221 claim is preempted by 49 C.F.R. Section 376.12(h), which requires a lease to "clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed." However, as Plaintiffs point out, the Fox court concluded that Section 376.12(h) "imposes disclosure and documentation requirements," but does not impose "substantive restriction[s] on the terms a carrier can include in its lease." Fox, 839 F.3d at 1214.

Rather, Plaintiffs' Section 221 claim for unlawful deductions for cargo equipment loss and escrow account payments is preempted by the same TIL Regulations that preempt Plaintiffs' similar Section 2802 claim for unlawful failure to reimburse for cargo equipment loss and escrow account payments. As discussed above, 49 C.F.R. Section 376.12(j)(3) permits carriers to make

deductions for cargo damage from payments to drivers.  Similarly, Plaintiffs' claim for escrow

fund deductions is preempted by 49 C.F.R. Section 376.12(k), which permits carriers to make

escrow fund deductions.

### 3.    California Labor Code § 226

Plaintiffs allege that Defendant violated California Labor Code Section 226 by failing to

provide accurate wage statements.  Section 226 provides:

> An employer, semimonthly or at the time of each payment of wages,
> shall furnish to his or her employee, either as a detachable part of
> the check, draft, or voucher paying the employee's wages, or
> separately if wages are paid by personal check or cash, an accurate
> itemized statement in writing showing (1) gross wages earned, (2)
> total hours worked . . . , (4) all deductions . . . , (5) net wages earned,
> (6) the inclusive dates of the period for which the employee is paid,
> (7) the name of the employee and only the last four digits of his or
> her social security number . . . , (8) the name and address of the legal
> entity that is the employer . . . , and (9) all applicable hourly rates in
> effect during the pay period and the corresponding number of hours
> worked at each hourly rate by the employee[.]

Cal. Labor Code § 226(a).  Plaintiffs allege:

> Defendants, in violation of Labor Code § 226(a), have engaged in a
> consistent practice . . . of regularly failing to furnish members of the
> Class with accurate, itemized wage statements showing all items
> required pursuant to said code section, including, but not limited to
> (1) total hours worked, (2) all deductions made, (3) and the name
> and address of the legal entity that is the employer

Am. Cmpl. ¶ 69.

Defendant contends that Plaintiffs' Section 226(a) claim is preempted by 49 C.F.R. Section

376.12(d) because subsection (d) requires "an entirely different set of disclosures, so that it is

impossible to comply with both."  Def.'s Supp'l Brief at 5.[6]  However, 49 C.F.R. Section

376.12(d) pertains only to information *contained in the lease* (or lease addendum) between the

carrier and driver.  See 49 C.F.R. §376.12(d) ("The amount to be paid by the authorized carrier for

equipment and driver's services shall be clearly stated on the face of the lease or in an addendum

which is attached to the lease. . . . The amount to be paid may be expressed as a percentage of

---

[6] As Plaintiffs point out, their Section 226 claim pertains to the contents of wage statements, not
the timing, and thus does not implicate 49 C.F.R. Section 376.12(f)'s requirement that carriers pay
drivers within 15 days after submission of necessary delivery documents and paperwork

18

gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease."). As Plaintiffs point out, 49 C.F.R. Section 376.12(d) does not conflict with California law regulating information contained in documents other than the lease, such as wage statements.

Defendant also suggests for the first time in its supplemental brief that, because the TIL Regulations set forth comprehensive standards for the settlement process between carriers and drivers, the regulations occupy that field and thus preempt California's wage statement law. Even if the Court were to consider this untimely argument, it would reject it. "The essential field preemption inquiry is whether the density and detail of federal regulation merits the inference that any state regulation within the same field will necessarily interfere with the federal regulatory scheme." <u>Nat'l Fed'n of the Blind v. United Airlines Inc.</u>, 813 F.3d 718, 734 (9th Cir. 2016). "The first step in determining whether that situation exists is to delineate the pertinent regulatory field; the second is to survey the scope of the federal regulation within that field." <u>Id.</u>

The scope of the field depends on the nature of the plaintiffs' claims. For example, where plaintiffs challenged the airline's policy of using automatic kiosks that were inaccessible to blind travelers, the pertinent field was not "air carrier accessibility" in general," but rather "airport kiosk accessibility for the blind." <u>Id.</u> at 737. Here, then, the relevant field is "required contents of wage statements issued to drivers." Because, as mentioned, the TIL Regulations do not involve wage statements, they cannot be said to occupy this field.

### 4. California Labor Code §§ 226.7, 512, 1182.11, & 1194

Plaintiffs claim that Defendant violated California Labor Code Sections 226.7, 512, 1182.11, and 1194 by failing to provide meal and rest breaks, and by failing to pay minimum wage. Regarding meal breaks, Plaintiffs allege:

> Plaintiffs . . . have regularly worked in excess of five (5) hours a day without being afforded at least a half-hour meal period in which they were relieved of all duties[.] . . . Because Defendants failed to afford proper meal periods, they are liable to Plaintiffs and similarly situated Truck Drivers for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided[.]

Am. Cmpl. ¶¶ 55-56. Regarding rest breaks, Plaintiffs allege:

> Plaintiffs . . . have regularly worked in excess of three and a half hours a day without being afforded at least a paid 10-minute rest period in which they were relieved of all duties[.] . . . Because Defendants failed to afford proper paid rest periods, they are liable to Plaintiffs and similarly situated Truck Drivers for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided.

Id. ¶¶ 59-60. Regarding minimum wage, Plaintiffs allege:

> At various times throughout the relevant statutory period, Defendants have required Plaintiffs and Class Members to wait for job assignments and/or to be released from a job location without paying them any compensation, resulting in Defendants failing to pay minimum wages for all hours worked, as required by law. 65. As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiffs and Class Members have been deprived of minimum wages

Id. ¶¶ 64-65

Defendant contends that these claims are preempted by 49 C.F.R. Section 376.12(d), which pertains to "compensation to be specified." This section requires that a driver's compensation be "clearly stated on the face of the lease or in an addendum which is attached to the lease." 49 C.F.R. § 376.12(d). In addition,

> The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount.

Id. According to Defendant, subsection (d) allows carriers and driver to agree on and adopt any of these forms of compensation, even one that does not compensate drivers on an hourly basis, so the subsection conflicts with Plaintiffs' meal and rest break and minimum wage claims, which require hourly compensation.

However, the California Labor Code does not require employers to compensate employees on an hourly basis. California law contemplates that employees may receive various types of remuneration, such as hourly earnings, salary, piecework earnings, and commissions. The Labor Code simply requires that, once an employee's regular rate of pay is calculated, it not be lower

than the minimum wage. Indeed, courts regularly convert atypical payment structures into regular rates of pay for purposes of determining whether employees received the minimum wage. See, e.g., Sillah v. Command Int'l Sec. Servs., 154 F. Supp. 3d 891, 911 (N.D. Cal. 2015) ("[T]he Court has found that there was no agreed upon hourly wage and that instead Plaintiff received a twice-monthly salary . . . of $1100 while Plaintiff worked in Linda, Anaheim, and Ontario and of $1200 while Plaintiff worked in San Jose. The Court calculates that these salaries correspond to weekly salaries of $507.69 per week in Linda, Anaheim, and Ontario, and $553.85 per week in San Jose. Applying the formula . . . for determining a regular hourly rate from a weekly salary, the Court calculates that Plaintiff's regular rate under the FLSA was $5.29 per hour in Linda, . . . Anaheim, [and] . . . the first two weeks in Ontario, $4.57 per hour in Ontario after the first two weeks, and $5.22 per hour in San Jose"). The TIL Regulations are silent as to minimum hourly compensation, and required meal and rest breaks, and thus these claims are not preempted.

Defendant also points out that its leases with Plaintiffs comply with 49 C.F.R. Section 376.12(d). However, because 49 C.F.R. Section 376.12(d) does not preempt California Labor Code Sections 226.7, 512, 1182.11, and 1194, if Plaintiffs were employees rather than independent contractors, Defendant's leases would be required comply with both the TIL Regulation and the California Labor Code. Thus, compliance with 49 C.F.R. Section 376.12(d) does not shield Defendant from potential liability under California Labor Code Sections 226.7, 512, 1182.11, and 1194.

## V.  CONCLUSION

For the reasons discussed above, Defendant's motion is GRANTED IN PART and DENIED IN PART. The FAAAA does not preempt Plaintiffs' claims. The TIL Regulations preempt Plaintiffs' first and second claims (except for their claim involving reimbursement for cellular telephones), but not Plaintiffs' third, fourth, fifth, or sixth claims.

**IT IS SO ORDERED.**

Dated:  April 10, 2017

ELIZABETH D. LAPORTE
United States Magistrate Judge