Aaron Kaufmann, State Bar No. 148580
David Pogrel, State Bar No. 203787
Giselle Olmedo, State Bar No. 294750
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile:  (510) 272-0174
E-mail: akaufmann@leonardcarder.com
E-mail: dpogrel@leonardcarder.com
E-mail: golmedo@leonardcarder.com

Paul T. Cullen, State Bar No. 193575
Barbara DuVan-Clarke, State Bar No. 259268
THE CULLEN LAW FIRM, APC
19360 Rinaldi Street, Box 647
Porter Ranch, California 91326
Telephone: (818) 360-2529
Facsimile:  (866) 794-5741
E-mail: paul@cullenlegal.com
E-mail: barbara@cullenlegal.com

*Attorneys for Plaintiffs*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MIGUEL VALADEZ, NORA LEDESMA, MANUEL LEDESMA, ANTHONY J. GREEN, SR., and ELEAQUIN TEMBLADOR,<br><br>Plaintiffs,<br><br>v.<br><br>CSX INTERMODAL TERMINALS, INC., and DOES 1 to 10 inclusive,<br><br>Defendants. | **Case No.  3:15-cv-05433-EDL**<br><br>Judge:  Hon. Elizabeth D. Laporte<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS**<br><br>Date:        March 6, 2018<br>Time:       9:00 a.m.<br>Dept:        E, 15th Floor |

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 6, 2018 at 9:00 a.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable Elizabeth D. Laporte in Courtroom E, 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs MIGUEL VALADEZ, NORA LEDESMA, MANUEL LEDESMA, ANTHONY J. GREEN, SR., and ELEAQUIN TEMBLADOR will and hereby do move this Court for an order, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment against Defendant CSX INTERMODAL TERMINALS, INC.  Plaintiffs move for adjudication of CSX's affirmative defense that Plaintiffs are independent contractors as averred in Answer of Defendant CSX Intermodal Terminals, Inc. to the Fourth Amended Class Action Complaint, Twelfth Separate and Additional Affirmative Defense (Independent Contractor Status), Dkt. 67.

This motion is based on the following Memorandum of Points and Authorities, the supporting Declaration of Aaron Kaufmann and its attached exhibits, the supporting Declarations of Miguel Valadez, Nora Ledesma, Manuel Ledesma, Anthony J. Green, Sr., and Eleaquin Temblador and their attached exhibits, a proposed order, and all other pleadings and papers on file in this action, and such argument as the Court may hear.

DATED:  January 30, 2018                    LEONARD CARDER, LLP

                                            THE CULLEN LAW FIRM, APC


                                            By:  /s/ Aaron Kaufmann
                                                 AARON KAUFMANN

                                            *Attorneys for Plaintiffs*

                                            *MIGUEL VALADEZ, NORA LEDESMA, MANUEL LEDESMA, and ELEAQUIN TEMBLADOR and ANTHONY GREEN, SR.*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

<u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................1

II.   FACTS ................................................................................................................2

    A.    Company Overview .................................................................................2

    B.    Plaintiffs .................................................................................................3

    C.    Plaintiffs' Job and Responsibilities ........................................................4

        1.    Plaintiffs' Job Duties .................................................................4

        2.    Contractor Operating and Lease Agreement ...............................6

        3.    CSXIT Required Plaintiffs to Follow Its Procedures and Policies and Monitored Their Compliance ...................................9

            a.    CSXIT Maintained Various Policies that Plaintiffs were Required to Follow ...........................................9

            b.    CSXIT Monitored Plaintiffs through its Applications and Systems ....................................................11

            c.    CSXIT's Supervision of Plaintiffs' Work .........................12

        4.    CSXIT Unilaterally Determined Plaintiffs' Compensation Terms ..............13

        5.    THE COLA Stipulated Which Party Was Responsible For Providing What and Which Business Expenses Were Borne by Which Party ..............13

III.  ARGUMENT .....................................................................................................15

    A.    Employee Coverage under California Wage & Hour Law ......................15

        1.    Wage & Hour Laws Protect Workers Like Plaintiffs....................15

        2.    The Test for Employment Status Under California Law.................16

    B.    Plaintiffs were CSXIT's Employees under California Law ....................17

        1.    CSXIT Retained All Necessary Control over the Key Parts of the Business .............................................................17

        2.    CSXIT Retains All Necessary Control Over the Details of Plaintiffs' Work. .............................................................18

    C.    The Secondary Factors Favor Plaintiffs' Employee Status ......................20

IV.  CONCLUSION .................................................................................................25

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

## TABLE OF AUTHORITIES

**Federal Cases**

*Alexander v. FedEx Ground Package System, Inc.*,
765 F.3d 981 (9th Cir. 2015) ........................................................................... *passim*

*Bowerman v. Field Asset Servs., Inc.*,
242 F.Supp.3d 910 (N.D. Cal. 2017) ............................................................... *passim*

*Bureerong v. Uvawas*,
922 F.Supp. 1450 (C.D. Cal. 1996) ....................................................................... 16

*Narayan v. EGL, Inc.*,
616 F.3d 895 (9th Cir. 2010) ........................................................................... *passim*

*O'Connor v. Uber Techs*,
82 F.Supp.3d 1133 (N.D. Cal. 2015) ..................................................................... 19

*Ruiz v. Affinity Logistics Corp.*,
754 F.3d 1093 (9th Cir. 2014) ......................................................................... *passim*

*Taylor v. Shippers Transp. Exp., Inc.*,
No. CV 13-02092 BRO (PLAx), 2014 WL 7499046 (C.D. Cal. Sept. 30, 2014) ............... 18, 19, 21

*Thomas v. Home Depot USA, Inc.*,
527 F.Supp.2d 1003 (N.D. Cal. 2007) .................................................................... 15

*Villalpando v. Exel Direct Inc.*,
No. 12-CV-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015) ...................... 15, 18, 20

**State Cases**

*Air Couriers Int'l v. Emp't Dev. Dep't*,
150 Cal.App.4th 923 (2007) .......................................................................... 17, 23

*Ayala v. Antelope Valley Newspapers, Inc.*,
59 Cal.4th 522 (2014) ................................................................................. *passim*

*Burlingham v. Gray*,
22 Cal.2d 87 (1943) ....................................................................................... 16

*Garcia v. Seacon Logix, Inc.*,
238 Cal.App.4th 1476 (2015) ........................................................................ 18, 19, 22

*JKH Enterprises, Inc. v. Dep't of Indus. Rel.*,
142 Cal.App.4th 1046 (2006) ............................................................................. 17

*Murphy v. Kenneth Cole Prods., Inc.*,
40 Cal.4th 1094 (2007) .................................................................................... 15

*S. G. Borello & Sons, Inc. v. Dept. of Indus. Relations*,
48 Cal.3d 341 (1989) ..................................................................................... *passim*

*Santa Cruz Transp. v. Unemployment Ins. Appeals Bd.*,
235 Cal.App.3d 1363 (Cal. Ct. App. 1991) ........................................................... 21, 22

**Federal Statutes**
Fed. R. Civ. Proc.
56 ......................................................................................................... 15

1    **I.      INTRODUCTION**

2            Plaintiffs all worked for Defendant CSX Intermodal Transportation, Inc. (CSXIT) as

3    independent contractor-classified drayage truck drivers under CSXIT's form Contractor Operating

4    and Lease Agreements (COLAs). Plaintiffs are prosecuting claims in this case under California law

5    to recover work-related expense reimbursements, premium pay for meal and rest period violations,

6    and penalties for pay statement violations. CSXIT sought to avoid these employer obligations by

7    classifying Plaintiffs as independent contractors rather than as employees.

8            Plaintiffs now move for partial summary judgment on CSXIT's independent contractor

9    defense.  *See Answer of Defendant CSX Intermodal Terminals, Inc. to the Fourth Amended Class*

10   *Action Complaint, Twelfth Separate and Additional Affirmative Defense (Independent Contractor*

11   *Status), Dkt. 67.* Courts in the Ninth Circuit have found employment status as a matter of law in

12   analogous circumstances, and the undisputed material facts in this case establish that Plaintiffs

13   worked as CSXIT's employees under California's "right to control" test for employment status.

14   Plaintiffs transported CSXIT's freight containers to CSXIT's customers while operating under

15   CSXIT's Department of Transportation (DOT) authority. CSXIT dispatched these assignments to

16   Plaintiffs, who received them on computer tablet devices provided by CSXIT. CSXIT required

17   Plaintiffs to use applications on the tablets to document each step in the transport and stay in

18   constant contact with CSXIT dispatchers. Plaintiffs had to perform the transports in conformity

19   with rules, requirements, and schedules determined by CSXIT; failure to do so was grounds for

20   termination. Consequently, CSXIT retained the right to control every significant aspect of

21   Plaintiffs' drayage work. Further, the weight of the so-called *Borello* "secondary factors" support a

22   finding of employee status. *S. G. Borello & Sons, Inc. v. Dept. of Indus. Relations,* 48 Cal.3d 341

23   (1989).

24           Because Plaintiffs' employment status can be resolved as a matter of law, their motion for

25   partial summary judgment against CSXIT's independent contractor defense should be granted.

26   ///

27   ///

28   ///

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS
CASE NO. 3:15-cv-05433 EDL

## II.    FACTS

### A.  Company Overview

CSX, Inc. provides rail-based freight transportation. *Paul Hand 30b6 Deposition, October 5, 2017 (hereinafter "30b6 Depo.") 32:24-33:1, attached as Ex. 1 to Declaration of Aaron Kaufmann in Support of Employment Status (hereinafter "Kaufmann Decl.").*[1] Defendant, CSX Intermodal Terminals, Inc. ("CSXIT") is a wholly owned subsidiary of CSX Corporation. *30b6 Depo. 32:8-18*; *Hand Declaration Deft. Preemption MSJ 1:12-15 attached as Kaufmann Decl. Ex. 3*. CSXIT's headquarters are in Jacksonville, Florida. *30b6 Depo. 40:21-25*.

The core of CSXIT's business is to provide intermodal freight transportation services—the movement of a container "by truck prior to or subsequent to its movement by another mode of transport"—to freight shippers that use CSX rail services. *Kaufmann Decl. Ex. 3 ¶7; 30b6 Depo. 33:12-22*. In California, CSXIT provides intermodal transportation services from railyards in Lathrop and near Los Angeles. *30b6 Depo. 43:22-44:24, 114:7-17; Kaufmann Decl. Ex. 3 ¶6; Paul Hand Deposition, January 18, 2017 (hereinafter "Hand Depo.") 30:4-31:21, attached as Ex. 2 to Kaufmann Decl.*

CSXIT used truck drivers, also known as "draymen," to transport loaded or empty containers between its customers and railyards. *30b6 Depo. 33:19-22, 116:12-18; Kaufmann Decl. Ex. 3 ¶8*. CSXIT's corporate designee, Paul Hand, acknowledged in his deposition, "Draymen are an integral part of the intermodal operations." *30b6 Depo. 116:12-23; Kaufmann Decl. Ex. 4 at CSXIT01074*. Plaintiffs Miguel Valadez, Anthony Green, Sr., Nora Ledesma, Manuel Ledesma and Eleaquin Temblador, all worked as "draymen," transporting CSXIT containers. *Kaufmann Decl. Ex. 3 ¶7*.

In September 2016, CSXIT terminated all COLAs with its drayage drivers in California. *30b6 Depo. 30:21-24*.

///

///

---

[1] Except for the supporting declarations of the five plaintiffs, all evidence offered in support of this motion are attached to Kaufmann Decl.

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS
CASE NO. 3:15-cv-05433 EDL

**B.  Plaintiffs**

Plaintiff Miguel Valadez performed drayage services for CSXIT from approximately 2005 to October 2013, operating under a COLA with Defendant. *Kaufmann Decl. Ex. 3 ¶16, Ex. 19 ¶ 2; Valadez MSJ Emp. Status Decl. ¶ 2.* He worked out of CSXIT's terminals in both City of Industry and later in Lathrop, California. *Kaufmann Decl. Ex. 19 ¶ 2.* He typically worked Monday through Friday and occasionally on Saturdays. *Kaufmann Decl. Ex. 19 ¶ 5.* In approximately, September 2013 CSXIT notified him that he needed a new truck to perform its deliveries. Plaintiff Valadez refused, so CSXIT terminated his contract. *Valadez MSJ Emp. Status Decl. ¶¶ 7-8.* He did not receive any assignments after CSXIT notified him of the termination. *Valadez MSJ Emp. Status Decl. ¶ 8.*

Plaintiff Anthony Green, Sr. performed drayage services for CSXIT from approximately October 2013 to February 2015, operating under a COLA with Defendant. *Kaufmann Decl. Ex. 3 ¶ 20, Ex. 20 ¶ 2; Green MSJ Emp. Status Decl. ¶ 2.*  He worked out of CSXIT's terminal in Lathrop. *Kaufmann Decl. Ex. 20 ¶ 2.* He typically worked Monday through Friday and occasionally on Saturdays. *Kaufmann Decl. Ex. 20 ¶ 5.* CSXIT terminated Plaintiff Green, Sr. in February 2015. *Green Depo. 90:8-22 attached as Kaufmann Decl. Ex. 27; Green MSJ Emp. Status Decl. ¶ 8.* He did not receive any assignments after CSXIT notified him that he was laid off. *Green MSJ Emp. Status Decl. ¶¶ 8-9.*

Plaintiff Nora Ledesma performed drayage services for CSXIT from approximately 2003 to March 2014, operating under a COLA with Defendant. *Kaufmann Decl. Ex. 3 ¶18; Ex. 21 ¶ 2; N. Ledesma MSJ Emp. Status Decl. ¶ 2.* She worked out of CSXIT's terminals in both City of Industry and in San Bernardino, California. *Kaufmann Decl. Ex. 21 ¶ 3.* She typically worked Monday through Friday and occasionally on Saturdays. *Kaufmann Decl. Ex. 21 ¶ 4.* In approximately March 2014, she received notification from CSXIT that it was terminating her COLA because she refused an assignment. *N. Ledesma MSJ Emp. Status Decl. ¶ 6.* Ms. Ledesma declined the assignment due to weather conditions that she believed made it unsafe to carry out the delivery. *N. Ledesma MSJ Emp. Status Decl. ¶ 6.*  She did not receive any assignments after CSXIT notified her of her firing. *N. Ledesma MSJ Emp. Status Decl. ¶ 6.*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

Plaintiff Manuel Ledesma performed drayage services for CSXIT from approximately 2003 to March 2014, operating under a COLA with Defendant. *Kaufmann Decl. Ex. 3 ¶ 19, Ex. 22 ¶ 2; M. Ledesma MSJ Emp. Status Decl. ¶ 2*. He worked out of CSXIT's terminals in both City of Industry and in San Bernardino. *Kaufmann Decl. Ex. 22 ¶ 3*. He typically worked Monday through Friday and occasionally on Saturdays. *Kaufmann Decl. Ex. 22 ¶ 4*. He notified CSXIT that he would no longer work for CSXIT due to how it treated Nora Ledesma. *M. Ledesma MSJ Emp. Status Decl. ¶ 6*.

Plaintiff Eleaquin Temblador performed drayage services for CSXIT from approximately 1994 to September 2016, operating under a COLA with Defendant. *Kaufmann Decl. Ex. 3 ¶ 21; Temblador MSJ Emp. Status Decl. ¶ 2*. He worked out of CSXIT's terminals in Santa Fe Springs, City of Industry, Compton and in Fontana, California. *Kaufmann Decl. Ex. 23 ¶ 2*. He typically worked Monday through Friday, and occasionally on Saturdays and Sundays. *Kaufmann Decl. Ex. 23 ¶ 3*. In approximately August 2016, CSXIT notified him that it was terminating his COLA. *Temblador MSJ Emp. Status Decl. ¶ 6*.

## C. Plaintiffs' Job and Responsibilities

### 1. Plaintiffs' Job Duties

Plaintiffs' drayage work was straightforward, requiring no special skills or training beyond a commercial drivers' license and limited prior experience. *Kaufmann Decl. Ex. 5, Ex. 17*. Their job was to transport either empty or loaded trailers or containers belonging to CSXIT from the railyard to CSXIT's customers, or from the customer's location to the railyard on time. *30b6 Depo. 38:15-18, 86:13-18, 105:4-13; Hand Depo. 45:21-46:5*.

Plaintiffs typically began the workday by arriving at the railyard with their truck tractor, hooking up to a chassis and CSXIT container, and then driving to a customer's location. *30b6 Depo. 21:5-21, 38:15-18, 104:16-25, 114:10-17; Hand Depo. 33:3-18; Kaufmann Decl. Ex. 19 ¶ 2 (Valadez), Ex. 20 ¶ 2 (Green), Ex. 21 ¶ 3 (N. Ledesma), Ex. 22 ¶ 3 (M. Ledesma), Ex. 23 ¶ 2 (Temblador)*. For empty moves, Plaintiffs dropped off an empty container to the customer's location, and picked it up later, after the customer filled it with its freight. *30b6 Depo. 20:3-6, 21:5-17*. For loaded moves, Plaintiffs typically arrived to the customer location with the sealed

1    container and had to wait for the customer to unload. *30b6 Depo. 90:14-91:6, 92:7-16; 104:19-25.*

2            Plaintiffs typically returned from a customer's location to the railyard with an empty or

3    sealed loaded container. *30b6 Depo. 21:5-21; Hand Depo. 50:16-51:4.* Occasionally the driver

4    "bobtailed" to or from the railyard—meaning he or she returned or left without a container. *30b6*

5    *Depo. 87:8-16.* On most days, Plaintiffs performed multiple such drayage assignments. *30b6 Depo.*

6    *20:2-18; Kaufmann Decl. Ex. 19 ¶ 7, Ex. 20 ¶ 7, Ex. 21 ¶ 9, Ex. 22 ¶ 9, Ex. 23 ¶ 7.*

7            CSXIT "arrange[d] for and dispatche[d]" all of the drayage assignments given to Plaintiffs.

8    *Kaufmann Decl. Ex. 3 ¶¶ 11-12; 30b6 Depo. 38:11-14; Hand Depo. 23:20-23.* Customers

9    contacted CSXIT to schedule drayage services to transport their freight in CSXIT containers. *Hand*

10   *Depo. 44:9-45:4; Valadez MSJ Emp. Status Decl. ¶ 3, Green MSJ Emp. Status Decl. ¶ 3, N.*

11   *Ledesma MSJ Emp. Status Decl. ¶ 3, M. Ledesma MSJ Emp. Status Decl. ¶ 3, Temblador MSJ*

12   *Emp. Status Decl. ¶ 3.* After CSXIT received a load request, its dispatchers located in CSXIT's

13   Jacksonville headquarters, sent Plaintiffs assignments using a proprietary computer application

14   called "Dispatch." *30b6 Depo. 18:19-25, 40:21-25, 60:2-11, 135:9-13; Hand Depo. 23:13-24,*

15   *39:19-22.*

16          Plaintiffs received their assignments on a computer/satellite communicating device

17   (hereinafter "tablet")[2] required by CSXIT that contained its Dispatch application. *30b6 Depo. 18:3-*

18   *7, 19:10-16; Kaufmann Decl. Ex. 6 ¶ 5E, Ex. 8 ¶ 5E-F; Green MSJ Emp. Status Decl. Ex. 1 ¶ 5E;*

19   *N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 5E; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 5E.*

20   Plaintiffs typically received one assignment pulling one container at a time. *Hand Depo. 49:21-*

21   *50:4, 50:16-20; Green MSJ Emp. Status Decl. ¶ 7; N. Ledesma MSJ Emp. Status Decl. ¶ 8; M.*

22   *Ledesma MSJ Emp. Status Decl. ¶ 8; Temblador MSJ Emp. Status Decl. ¶ 8.* The electronic

23   dispatch provided all the important delivery details—it instructed Plaintiffs where to pick up/drop

24   off containers, the load type, customer name, customer location, appointment time, load number,

25   and number of miles for the move. *Kaufmann Decl. Ex. 7 at P000012.* CSXIT expected Plaintiffs

26   to be on time for the delivery appointment. *Hand Depo. 60:18-61:8, 105:4-13.*

27   ────────────────

28   [2] CSXIT first required Plaintiffs to use Blackberries, but later switched to using Samsung Galaxy Note Tablets. *30b6 Depo. 25:1-5.*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS
CASE NO. 3:15-cv-05433 EDL

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

1    Plaintiffs were required to use the tablets and CSXIT's Dispatch application to document

2  and update dispatchers as to the completion of each significant step in their work, including: "begin

3  move"; "report departure," marking departure from the work site with the container in tow; "report

4  arrival," marking their arrival at the customer's location; and "complete move," marking the

5  completion of the trip. *30b6 Depo. 19:22-20:21; Kaufmann Decl. Ex. 7 at P000013, 29-47.* Before

6  completing the move, CSXIT required Plaintiffs to obtain the customer's signature and upload

7  delivery paperwork into Dispatch. *Kaufmann Decl. Ex. 7 at P000015, 17, Ex. 6 ¶ 6E, Ex. 8 ¶ 6E;*

8  *Green MSJ Emp. Status Decl. Ex. 1 ¶ 6E; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6E; M.*

9  *Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6E.* CSXIT used this paperwork to invoice its customers.

10  *30b6 Depo. 29:24-30:3, 97:11-17; Valadez MSJ Emp. Status Decl. ¶ 4, Green MSJ Emp. Status*

11  *Decl. ¶ 4, N. Ledesma MSJ Emp. Status Decl. ¶ 4, M. Ledesma MSJ Emp. Status Decl. ¶ 4,*

12  *Temblador MSJ Emp. Status Decl. ¶ 4.*

13    After completing the move, Plaintiffs notified CSXIT's dispatchers and waited for the next

14  assignment or returned to the railyard. *30b6 Depo. 20:16-18.*

15    **2.  Contractor Operating and Lease Agreement**

16    CSXIT required each of the Plaintiffs to enter into its form COLA as a precondition to

17  working.[3] *30b6 Depo. 31:1-7, 32:20-23; Valadez MSJ Emp. Status Decl. ¶ 2, Green MSJ Emp.*

18  *Status Decl. ¶ 2, N. Ledesma MSJ Emp. Status Decl. ¶ 2, M. Ledesma MSJ Emp. Status Decl. ¶ 2,*

19  *Temblador MSJ Emp. Status Decl. ¶ 2.* Most of Plaintiffs' COLAs automatically renewed for

20  "successive thirty (30) day periods."[4] *Kaufmann Decl. Ex. 6 ¶ 1; Green MSJ Emp. Status Decl.,*

21  *Ex. 1 ¶ 1; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 1; M. Ledesma MSJ Emp. Status Decl. Ex. 1*

22  *¶ 1.* All of CSXIT's COLAs in the United States, including the COLAs Plaintiffs entered into,

23  were substantively the same in most major respects. *30b6 Depo. 49:13-19, 68:9-15; Kaufmann*

24  _____

25  [3] CSXIT contracted agents—third party medium to large trucking companies with their own DOT
   authorities—to perform deliveries when it did not have enough drivers to perform drayage services.
   *30b6 Depo. 31:1-17.*

26  [4] While Plaintiff Temblador's last COLA dated April 21, 2015 provided for a one-year contract
   term, he worked under earlier versions of the COLA since approximately 1994. *Kaufmann Decl.*

27  *Ex. 8 ¶ 1; Temblador MSJ Emp. Status Decl. ¶ 2.* In June 2016, CSXIT issued an addendum to
   Plaintiff Temblador's COLA where it changed the term to expire on September 15, 2016.

28  *Kaufmann Decl. Ex. 29.*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS
CASE NO. 3:15-cv-05433 EDL

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

1   *Decl. Ex. 6, Ex. 8; Green MSJ Emp. Status Decl. Ex. 1; N. Ledesma MSJ Emp. Status Decl. Ex. 1;*

2   *M. Ledesma MSJ Emp. Status Decl. Ex. 1.* CSXIT did not negotiate different terms for any of the

3   Plaintiffs or other drivers. *30b6 Depo. 49:5-23; Kaufmann Decl. Ex. 6, Ex. 8; Green MSJ Emp.*

4   *Status Decl. Ex. 1; N. Ledesma MSJ Emp. Status Decl. Ex. 1; M. Ledesma MSJ Emp. Status Decl.*

5   *Ex. 1.*

6         While the COLA classified Plaintiffs as "independent contractors" and required them to

7   provide their own vehicles, Plaintiffs had to operate for CSXIT using DOT authorization. *30b6*

8   *Depo. 32:1-3, 104:10-15; Hand Depo. 35:18-36:21; Kaufmann Decl. Ex. 6 ¶¶ 6A, 9A-B; Ex. 8 ¶¶*

9   *6A, 9A-B; Green MSJ Emp. Status Decl. Ex. 1 ¶¶ 6A, 9A-B; N. Ledesma MSJ Emp. Status Decl.*

10   *Ex. 1 ¶¶ 6A, 9A-B; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶¶ 6A, 9A-B; Valadez Depo. 120:4-*

11   *121:6 attached as Kaufmann Decl. Ex. 24; N. Ledesma Depo. 178:11-180:13 attached as*

12   *Kaufmann Decl. Ex. 25.* Along with CSXIT's DOT authorization, Plaintiffs' vehicles had to bear

13   CSXIT's logos. *30b6 Depo. 98:3-24; Kaufmann Decl. Ex. 6 ¶ 9B, Ex. 8 ¶ 9B; Green MSJ Emp.*

14   *Status Decl. Ex. 1 ¶ 9B; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 9B; M. Ledesma MSJ Emp.*

15   *Status Decl. Ex. 1 ¶ 9B; Green Depo. 116:6-17, 117:6-13 attached as Kaufmann Decl. Ex. 27.*

16   CSXIT also required Plaintiffs to obtain a vehicle inspection every 90 days at a place designated by

17   CSXIT and forward maintenance forms to CSXIT. *30b6 Depo. 57:14-18, 77:23-78:1, 79:11-19;*

18   *Kaufmann Decl. Ex. 6 ¶ 6C, Ex. 8 ¶ 6C; Green MSJ Emp. Status Decl. Ex. 1 ¶ 6C; N. Ledesma*

19   *MSJ Emp. Status Decl. Ex. 1 ¶ 6C; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6C.*

20         Under the COLA, Plaintiffs were also required to maintain certain insurance coverage types

21   and levels, including occupational-accident, vehicle, and cargo insurance. *30b6 Depo. 98:25-*

22   *100:13, 142:11-14; Kaufmann Decl. Ex. 6 ¶¶ 10A-D, Ex. 8 ¶¶ 10A-D; Green MSJ Emp. Status*

23   *Decl. Ex. 1 ¶¶ 10A-D; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶¶ 10A-D; M. Ledesma MSJ Emp.*

24   *Status Decl. Ex. 1 ¶¶ 10A-D.* CSXIT reserved the right to modify the insurance coverage amounts

25   over the course of the COLA. *30b6 Depo. 100:18-24; Kaufmann Decl. Ex. 6 ¶ 10B, Ex. 8 ¶ 10B; ¶*

26   *Green MSJ Emp. Status Decl. Ex. 1 ¶ 10B; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 10B; M.*

27   *Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 10B.* CSXIT encouraged and facilitated the purchase of

28   certain insurance through it. *30b6 Depo. 99:21-25; 100:3-7; Kaufmann Decl. Ex. 6 at*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1   *CSXIT00167, 169, Ex. 8 at CSXIT00992, 995-1003; Green MSJ Emp. Status Decl. at CSXIT00785,*

2   *788-789; N. Ledesma MSJ Emp. Status Decl. at CSXIT00477, 479; M. Ledesma MSJ Emp. Status*

3   *Decl. at CSXIT00666, 668; Green Depo. 104:9-17, 105:1-4, 108:18-111:1 attached as Kaufmann*

4   *Decl. Ex. 27; Valadez Depo. 93:23-94:20, 96:9-17 attached as Kaufmann Decl. Ex. 24; Temblador*

5   *Depo. 119:10-121:8; 123:3-7, 123:17-124:23 attached as Kaufmann Decl. Ex. 28.*

6          The COLA also required that Plaintiffs' utilize a computer/satellite communicating device

7   that was compatible with the "system utilized" by CSXIT. *Kaufmann Decl. Ex. 6 ¶ 5E, Ex. 8 ¶ 5E,*

8   *Green MSJ Emp. Status Decl. Ex. 1 ¶ 5E; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 5E; M.*

9   *Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 5E.* A later version of the COLA also provided that the

10  tablet required by CSXIT "must be carried in each Vehicle at all times while services are being

11  provided, and that tablet must be functioning and must be actively transmitting location

12  information and delivery status information to [CSXIT] in a real time basis." *Kaufmann Decl. Ex. 8*

13  *¶ 5F.* In addition, the later COLA made drivers agree to allow CSXIT access to the satellite

14  tracking information. *Kaufmann Decl. Ex. 8 ¶ 5G.*

15         The COLA also mandated that Plaintiffs perform drayage services in compliance with rules

16  set by CSXIT, which CSXIT's corporate designee referred to as "SOPs." *30b6 Depo. 12:5-7,*

17  *47:10-22, 75:1-25; Kaufmann Decl. Ex. 6 ¶ 6B, Green MSJ Emp. Status Decl. Ex. 1 ¶ 6B; N.*

18  *Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6B; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6B*

19  *("Contractor agrees to abide by Carrier's safety rules as documented from time to time in the*

20  *Carrier Safety Rules,[5] attached as Exhibit D and by reference made a part hereof. Carrier agrees*

21  *to provide Contractor with, and Contractor agrees to comply with, updates to Exhibit D as they*

22  *occur.").* Those SOPs or rules—discussed in further detail below—included CSXIT's "Drayman

23  Safety Handbook" (an exhibit to the COLA), a 124-page "Safety Handbook," and other stand-

24  alone policies and procedures. *30b6 Depo. 75:1-25, 112:3-113:18; Kaufmann Decl. Ex. 6 ¶ 6B, Ex.*

25  *8 ¶ 6B, Green MSJ Emp. Status Decl. Ex. 1 ¶ 6B; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6B;*

26  *M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6B.* The COLA incorporated all of these policies and

27

28  _____
[5] Later versions of the COLA used similar language changing Carrier Safety Rules to "Carrier's
Drayage Carrier Safety Handbook." *Kaufmann Decl. Ex. 8 ¶ 6B.*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS
CASE NO. 3:15-cv-05433 EDL

1    procedures by reference. *30b6 Depo. 75:1-22; Kaufmann Decl. Ex. 6 ¶ 6B, Ex. 8 ¶ 6B, Green MSJ*

2    *Emp. Status Decl. Ex. 1 ¶ 6B; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6B; M. Ledesma MSJ*

3    *Emp. Status Decl. Ex. 1 ¶ 6B.*

4            The COLA afforded both parties an at-will right to cancel the contract with adequate

5    notice—initially 15 days, and later 30 days. *Kaufmann Decl. Ex. 6 ¶ 14, Ex. 8 ¶ 14; Green MSJ*

6    *Emp. Status Decl. Ex. 1 ¶ 14; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 14; M. Ledesma MSJ*

7    *Emp. Status Decl. Ex. 1 ¶ 14.* While the COLA provided for a notice period, CSXIT's corporate

8    designee was unaware of any driver in California ever receiving any assignments during the

9    termination notice period. *30b6 Depo. 101:23-102:17.* Plaintiffs Green, Valadez and Nora

10   Ledesma did not receive assignments after CSXIT notified them of their terminations. *Valadez*

11   *MSJ Emp. Status Decl. ¶ 8, Green MSJ Emp. Status Decl. ¶ 9, N. Ledesma MSJ Emp. Status Decl.*

12   *¶ 6.*

13       **3.  CSXIT Required Plaintiffs to Follow Its Procedures and Policies and Monitored
             Their Compliance**

14

15           **a.  CSXIT Maintained Various Policies that Plaintiffs were Required to Follow**

16           CSXIT required Plaintiffs to follow its rules; otherwise, CSXIT could deem the failure to

17   do so a breach of the COLA. *30b6 Depo. 113:12-15, 129:17-19, 130:14-16; Kaufmann Decl. Ex. 9*

18   *at CSXIT00874 ("Drayman are an integral part of Intermodal operations and must be aware of*

19   *and comply with the following rules while operating on CSX Intermodal Terminals Inc. terminals.*

20   *Willful negligence may result in draymen being banned from CSX Intermodal Terminals, Inc.,*

21   *property."); Kaufmann Decl. Ex. 9 at CSXIT00873 ("Drayman entering the facility will be*

22   *required to conform to the rules governing persons at that facility.").*

23           Each of the drivers performing deliveries for CSXIT received a copy of a pocket Safety

24   Handbook and Drayman Safety Handbook for its facilities as part of driver orientation. *30b6 Depo.*

25   *48:18-23, 49:24-50:10, 109:11-21, 113:3-11.* Drivers were required to acknowledge receipt of the

26   safety handbook and "agree to read and comply with the CSX Intermodal Safety Rules and

27   Standard Operating Procedures (SOP)" and to "contact a supervisor for explanation of any rule or

28   rules" not understood. *30b6 Depo. 113:3-18; Kaufmann Decl. Ex. 4 at CSXIT01014.*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

The handbooks detailed CSXIT's policies and procedures governing its drayage services including driving instructions, conduct at the railyard, the handling of cargo, and accident/mishap reporting instructions. *30b6 Depo. 117:16-18, 117:25-118:8, 118:21-22, 119:4-12, 119:24-25, 120:1-2, 121:7-9, 121:22-23, 123:8-16, 126:8-13; Kaufmann Decl. Ex. 4 at CSXIT01034-51, 1119-20 (see e.g. Ex. 4, ¶ D-8(c) ("Do not keep in possession or wear headphones associated with audio devices…while operating any CSX Intermodal Terminals Inc. vehicle")*. CSXIT reserved the right to change the rules and instructions in the handbooks at any time. *30b6 Depo. 75:23-76:4; Kaufmann Decl. Ex. 4 at CSXIT01016, Ex. 9 at CSXIT00873, Ex. 6 ¶ 6B, Ex. 8 ¶ 6B; Green MSJ Emp. Status Decl. Ex. 1 ¶ 6B; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6B; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6B.* Failure to comply with the safety rules and the handbook were grounds to terminate the COLA. *30b6 Depo. 76:8-11, 113:12-18.*

In addition to adhering to CSXIT's safety handbooks, Plaintiffs were required to follow various other CSXIT policies. *30b6 Depo. 47:1-9, 13-22.* CSXIT maintained an Accident Policy[6], Citations/Fines Policy[7], Overweight Prevention Policy[8], Roadside Inspection Policy[9] and Controlled Substances and Alcohol Use and Testing Policy. *30b6 Depo. 115:18-25, Kaufmann*

---

[6] CSXIT's Accident Policy required drivers to call an Accident hotline and/or notify the fleet supervisor of any accidents. *30b6 Depo. 41:17-23, 82:25-83:13; Kaufmann Decl. Ex. 10, Ex. 6 ¶ 6G, Ex. 8 ¶ 6G, Green MSJ Emp. Status Decl. Ex. 1 ¶ 6G; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6G; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6G.* Failure to make an Accident Report could result in the termination of the COLA. *Kaufmann Decl. Ex. 10 at CSXIT00826.*

[7] CSXIT's Citations & Fine Policy required drivers to notify dispatch immediately "via text on the Samsung Tablet" if stopped for an overweight, parking, or out of route fine. *Kaufmann Decl. Ex. 17 at CSXIT00832, Ex. 6 ¶ 6J, Ex. 8 ¶ 6J; Green MSJ Emp. Status Decl. Ex. 1 ¶ 6J; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6J; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6J.* "Failure to notify dispatch of the fine or follow up when prompted for additional information by Dispatch, [would] result in the fine being deducted from…settlements." *Kaufmann Decl. Ex. 17 at CSXIT00832.*

[8] The CSXIT Overweight Prevention Policy provided drivers with detailed instructions on how to handle overweight loads. *Kaufmann Decl. Ex. 11.* It also required drivers to communicate with dispatchers, and required drivers to obtain authorization from CSXIT to proceed with the load. "Any deviation from [the] process could result in the inability to pay the weight confirmation accessorial or even the line haul." *Kaufmann Decl. Ex. 11 at CSXIT00838.*

[9] CSXIT's Roadside Inspection Policy provided instructions for roadside inspections. *Kaufmann Decl. Ex. 12.* It required drivers to submit all Roadside Inspection Reports immediately to their fleet supervisor. *Kaufmann Decl. Ex. 12 at CSXIT00841.* The policy provided that drivers with three or more Roadside Inspection violations "within a six-month period will be placed on a (6) month Safety Hold and depending on the severity of the violations may have their COLA cancelled with CSX Intermodal Terminals, Inc." *Kaufmann Decl. Ex. 12 at CSXIT00843; 30b6 Depo. 132:24-133:4.*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS
CASE NO. 3:15-cv-05433 EDL

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1    *Decl. Ex. 10 (drivers responsible for following CSXIT's Accident Policy); 30b6 Depo. 129:11-16,*

2    *Kaufmann Decl. Ex. 11 (drivers expected to follow CSXIT's Overweight Prevention Policy); 30b6*

3    *Depo. 130:7-13, Kaufmann Decl. Ex. 12 (drivers expected to follow CSXIT's Roadside Inspection*

4    *Policy); 30b6 Depo. 127:18-128:17 (drivers responsible for paying citations); 30b6 Depo. 133:17-*

5    *22 (drivers were expected to follow CSXIT's policy on Controlled Substances and Alcohol Use*

6    *Testing).*

7         Drivers were also required to abide by the railyard's and CSXIT's customers' policies.

8    *30b6 Depo. 74:3-9, 110:25-111:14.* CSXIT could deem a driver unfit or unqualified for violating

9    one of its customers' policies, and as a result, terminate the contract. *30b6 Depo. 74:3-14.*

10              **b.  CSXIT Monitored Plaintiffs through its Applications and Systems**

11        CSXIT required Plaintiffs to use a Galaxy tablet with its "Dispatch" application. *30b6*

12   *Depo. 18:3-8, 21-25, 26:7-13.* CSXIT trained Plaintiffs on how to use the tablet, and provided

13   Plaintiffs with detailed, step-by-step instructions on how to use its applications prepared by its

14   Manager of Business Systems for Truck Operations. *30b6 Depo. 10:1-2, 51:22-24, 56:20-24,*

15   *138:10-20; Kaufmann Decl. Ex. 15 at CSXIT01226; Ex. 4 at P000001-52; Temblador*

16   *Depo.173:17-23 attached as Kaufmann Decl. Ex. 28.*

17        CSXIT expected Plaintiffs to follow its procedures and instructions for the tablet. *30b6*

18   *Depo. 138:21-23.* Plaintiffs were required to update and document their delivery progress using the

19   Dispatch application. *30b6 Depo. 19:18-20:18, 22:5-9; Valadez MSJ Emp. Status Decl. ¶ 5; Green*

20   *MSJ Emp. Status Decl. ¶ 5; N. Ledesma MSJ Emp. Status Decl. ¶ 5; M. Ledesma MSJ Emp. Status*

21   *Decl. ¶ 5; Temblador MSJ Emp. Status Decl. ¶ 5.* If a driver failed to document certain steps on

22   the device, such as pre-trip and post-trip vehicle inspections, the application would automatically

23   send a warning message to the driver. *Kaufmann Decl. Ex. 7 at P000028.*

24        CSXIT's dispatchers regularly communicated with drivers via text messages and telephone

25   calls, including any concerns about meeting scheduled delivery times. *30b6 Depo. 60:2-24, 136:9-*

26   *12.* Dispatchers could use Dispatch to text message instructions to the Drivers, such as, "Don't play

27   Angry Birds while in motion." *Kaufmann Decl. Ex. 7 at P000011; 30b6 Depo. 23:2-5.* Plaintiffs'

28   failure to follow CSXIT's instructions and procedures for using the tablet could constitute a breach

                                          11

of the COLA. *30b6 Depo. 138:10-23.*

CSXIT monitored Plaintiffs' work through its Dispatch, Pegasus and XRS applications. *30b6 Depo. 15:4-24, 18:10-23:5, 135:9-136:12.* The Dispatch application on the drivers' tablets directly fed into Pegasus—a system used to monitor Plaintiffs' work and generate Plaintiffs' weekly settlement statements. *30b6 Depo. 18:22-25, 20:12-15, 23:15-21, 26:17-20.* CSXIT used Pegasus to track whether Plaintiffs were performing deliveries on time, which was essential to satisfactorily completing the work. *30b6 Depo. 105:4-13, 135:17-21, 136:3-8, 137:18-22.* In addition, CSXIT used an electronic logging device, XRS System, to log drivers' hours of service. *30b6 Depo. 13:9-24.* The XRS system tracked whenever Plaintiffs turned on their vehicles, which allowed CSXIT to record Plaintiffs' work hours. *30b6 Depo. 15:9-23; 142:18-143:10.*

### c. CSXIT's Supervision of Plaintiffs' Work

In addition to the electronic monitoring of Plaintiffs' work through the tablets and applications, each of the Plaintiffs worked under a CSXIT fleet supervisor, Fernando Jimenez, and fleet coordinator, Sandra Madrid. *30b6 Depo. 38:19-25, 39:18-40:8, 46:9-48:17, 58:19-59:9.*

The fleet supervisor and coordinator were responsible for recruiting drivers in California. *30b6 Depo. 39:18-40:1, 50:14-20, 58:19-59:5; Kaufmann Decl. Ex. 15 at CSXIT01226, Ex. 16 at CSXIT01230.* The fleet supervisor was also responsible for conducting the truck driver onboarding process—meeting new truck drivers, presenting them with the COLA and collecting their signatures, conducting the orientation process, training them on how Defendant operated, its policies and standard operating procedures, loading the CSXIT application on the tablet, "managing and training" drivers on the tablet and CSXIT's communication applications, and providing the electronic logging devices to drivers. *30b6 Depo. 19:4-8, 43:10-17, 51:3-10, 18-21; 54:23-24 - 55:1-11; 56:20-24; Kaufmann Decl. Ex. 15 at CSXIT01226, Ex. 16 at CSXIT01230.* The fleet coordinator assisted the fleet supervisor in carrying out these responsibilities. *30b6 Depo. 58:19-59:9.*

The fleet supervisor and fleet coordinator also held "safety" meetings with the drivers as provided for under the COLA. *30b6 Depo. 78:17-22, 79:11-19; Kaufmann Decl. Ex. 6 ¶ 6D, Ex. 8 ¶ 6D; Green MSJ Emp. Status Decl. Ex. 1 ¶ 6D; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6D;*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

12

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

*M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6D (Drivers agree to make themselves "available for periodic safety inspections and safety meetings at a place designated by Carrier"); Valadez Depo. 241:4-20 attached as Kaufmann Decl. Ex. 24; Temblador Depo. 134:1-25 attached as Kaufmann Decl. Ex. 28; M. Ledesma Depo. 125:6-22 attached as Kaufmann Decl. Ex. 26.* The fleet supervisor could also meet with drivers individually to discuss safety violations if he found a driver in violation of the Safety Handbook. *30b6 Depo. 111:15-19.*

### 4.  CSXIT Unilaterally Determined Plaintiffs' Compensation Terms

CSXIT paid Plaintiffs weekly pursuant to a uniform Rate Schedule. *30b6 Depo. 84:4-7, 139:5-8; Kaufmann Decl. Ex. 3 ¶ 22, Ex. 18 at PLTF MV003137.* It provided the payment amounts to Plaintiffs for loaded, empty, chassis, and bobtail moves depending on the distance traveled. *30b6 85:11-14, Kaufmann Decl. Ex. 18 at PLTF MV003137.* The Rate Schedule attached to the COLA also stipulated that Plaintiffs could receive accessorial charges if preauthorized by CSXIT. *Kaufmann Decl. Ex. 18 at PLTF MV003138, Kaufmann Decl. Ex. 3, ¶22.* CSXIT prepared settlement statements detailing the deliveries Plaintiffs' performed using Pegasus. *30b6 Depo. 23:15-18, 139:9-14.*

The same Rate Schedules governed pay for all of the Plaintiffs and other drivers in California. *30b6 Depo. 84:11-15, 96:10-13; Kaufmann Decl. Ex. 18.* CSXIT's corporate designee was unaware of any driver negotiating a different rate or accessorial schedule. *30b6 Depo. 84:19-22, 96:10-16.* CSXIT reserved the right to modify the rate schedule and accessorials at any time. *30b6 Depo. 84:16-18, 96:17-20; Kaufmann Decl. Ex. 6 ¶ 7A, Ex. 8 ¶ 7A; Green MSJ Emp. Status Decl. Ex. 1 ¶ 7A; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 7A; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 7A.*

### 5.  THE COLA Stipulated Which Party Was Responsible For Providing What and Which Business Expenses Were Borne by Which Party

The COLAs required Plaintiffs to provide and pay for their own vehicles; pay all vehicle expenses, including fuel, oil, tires, and all equipment accessories and devices; maintenance costs; all mobile communications equipment and service costs; insurance costs; base plates, licenses and tax payments; all expenses incurred to transfer any shipment to complete delivery in the event of

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

1  breakdown, delay or accident; uncollectable freight charges from customers; fines and citations.

2  *30b6 Depo. 83:14-25; Kaufmann Decl. Ex. 6 ¶ 6I, Ex. 8, ¶ 6I; Green MSJ Emp. Status Decl. Ex. 1*

3  *¶ 6I; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6I; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 6I.*

4  CSXIT did not reimburse Plaintiffs for any of these expenses. *30b6 Depo. 83:20-84-3.*

5          As noted above, CSXIT required Plaintiffs use a tablet loaded with CSXIT's application,

6  Dispatch, to document their work and communicate with its dispatchers. *30b6 Depo. 18:5-25,*

7  *26:7-13; Kaufmann Decl. Ex. 6 ¶ 5E, Ex. 8 ¶¶ 5E-F; Green MSJ Emp. Status Decl. Ex. 1 ¶ 5E; N.*

8  *Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 5E; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 5E.*

9  Plaintiffs and all other drivers in California purchased and used the same make and model of tablet.

10  *30b6 Depo. 18:3-4, 26:7-10, 74:22-25; Green Depo. 136:20-137:6 attached as Kaufmann Decl.*

11  *Ex. 27 (The fleet supervisor and assistant told him he had to buy the tablet from CSXIT);*

12  *Temblador Depo. 170:19-173:7 attached as Kaufmann Decl. Ex. 28 (At a safety meeting, the fleet*

13  *supervisor told drivers they could not use their own tablets).* CSXIT's corporate designee did not

14  know of any California driver providing his or her own compatible tablet. *30b6 Depo. 74:22-25.*

15  CSXIT deducted the tablet costs from Plaintiffs' settlement checks. *30b6 Depo. 18:14-16, 136:13-*

16  *18; Kaufmann Decl. Ex. 7 at P000004, Ex. 8 ¶ 5F.*

17          In addition, CSXIT required Plaintiffs to deposit money into an escrow account to cover

18  any additional liabilities. *30b6 Depo. 96:21-24; Kaufmann Decl. Ex. 6 ¶ 8A, Ex. 8 ¶ 8A; Green*

19  *MSJ Emp. Status Decl. Ex. 1 ¶ 8A; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 8A; M. Ledesma*

20  *MSJ Emp. Status Decl. Ex. 1 ¶ 8A.* CSXIT could unilaterally draw down from the escrow account,

21  including for not submitting delivery documentation. *30b6 Depo. 97:7-17; Kaufmann Decl. Ex. 6 ¶*

22  *8C, Ex. 8 ¶ 8C; Green MSJ Emp. Status Decl. Ex. 1 ¶ 8C; N. Ledesma MSJ Emp. Status Decl. Ex.*

23  *1 ¶ 8C; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 8C.*

24          CSXIT provided Plaintiffs with its permits and DOT placards. *30b6 Depo. 97:22-98:8;*

25  *Kaufmann Decl. Ex. 6 ¶¶ 9A-B, Ex. 8 ¶¶ 9A-B; Green MSJ Emp. Status Decl. Ex. 1 ¶¶ 9A-B; N.*

26  *Ledesma MSJ Emp. Status Decl. Ex. 1 ¶¶ 9A-B; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶¶ 9A-*

27  *B.* CSXIT required that its company placards and logos to be affixed to Plaintiffs' vehicles. *30b6*

28  *Depo. 98:3-24; Kaufmann Decl. Ex. 6 ¶¶ 9A-B, Ex. 8 ¶¶ 9A-B; Green MSJ Emp. Status Decl. Ex. 1*

14

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

*¶¶ 9A-B; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶¶ 9A-B; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶¶ 9A-B.* Plaintiffs were required to return permits upon the termination of the COLA. *Kaufmann Decl. Ex. 6 ¶ 9A, Ex. 8 ¶ 9A; Green MSJ Emp. Status Decl. Ex. 1 ¶ 9A; N. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 9A; M. Ledesma MSJ Emp. Status Decl. Ex. 1 ¶ 9A.*

## III.    ARGUMENT

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56. Here, as it is indisputable that Plaintiffs provided services for CSXIT, *see supra, II.C*, Plaintiffs have established their prima facie case that the relationship was one of employment. *See Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010). The burden thus shifts to CSXIT to prove its independent contractor affirmative defense. *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1100 (9th Cir. 2014). Construing the facts in the light most favorable to defendant, CSXIT cannot meet this burden. Courts in the Ninth Circuit have repeatedly found employment status as a matter of law where, as here, a form contract shapes much of the working relationship. *Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (9th Cir. 2015) (FedEx drivers were employees as a matter of law on summary judgment under California's right-to control test); *Ruiz*, 754 F.3d 1093 (reversing trial court's ruling in favor of defendant after bench trial and finding truck drivers were employees as a matter of law under California's common law right-to-control test); *Bowerman v. Field Asset Servs., Inc.*, 242 F.Supp.3d 910 (N.D. Cal. 2017) (granting property repair service vendors summary judgment on employment status under California law); *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015) (granting truck drivers summary judgment on employment status under California law).

### A.   Employee Coverage under California Wage & Hour Law

#### 1.   Wage & Hour Laws Protect Workers Like Plaintiffs

California's Labor Code embodies a strong public policy in favor of protecting employee rights. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1103 (2007). It is a "comprehensive and detailed remedial scheme" designed to make workers whole. *Thomas v. Home Depot USA, Inc.*, 527 F.Supp.2d 1003, 1010 (N.D. Cal. 2007); *see also Bureerong v. Uvawas*, 922 F.Supp.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1450, 1470 (C.D. Cal. 1996) (adopting broad definition of 'employment,' given "the fundamental remedial purposes" of the Labor Code). Accordingly, in assessing whether workers are employees covered by California's wage and hour laws, the test "must be applied with deference to the purposes of the protective legislation." *Alexander*, 765 F.3d at 992 (citing *Borello*, 48 Cal.3d at 353).

Plaintiffs—drayage truck drivers—are precisely the sort of blue-collar worker these laws were intended to protect. By classifying Plaintiffs as independent contractors, CSXIT sought to avoid several of the employer obligations under California's wage and hour laws and transfer many of its costs of doing business onto the Plaintiffs. *30b6 Depo. 140:4-146:9.*

## 2. The Test for Employment Status Under California Law

Under California law, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Alexander*, 765 F.3d at 988, citing *Borello*, 48 Cal.3d at 350. The test focuses on "not how much control a hirer *exercises*, but how much control the hirer retains the *right* to exercise." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal.4th 522, 533 (2014) (emphasis in original).

Defendant's control rights need *not* extend to every aspect of the plaintiff's work; "the relevant question is whether the defendant retains 'all necessary control' over the plaintiff's performance of his job duties." *Bowerman*, 242 F.Supp.3d at 938-39, citing *Borello*, 48 Cal.3d at 357. The Ninth Circuit has adopted the "all necessary control" test for determining employment status under California law. *Alexander*, 765 F.3d at 992; *Ruiz*, 754 F.3d at 1101.

The level of control necessary for employment status depends on the nature of the work. "[T]he fact that a certain amount of freedom of action is inherent in the nature of the work does not change the character of the employment where the employer has general supervision and control over it." *Ayala*, 59 Cal.4th at 531, *quoting Burlingham v. Gray,* 22 Cal.2d 87, 100 (1943). In addition, as the California Supreme Court observed in *Borello,* simpler work requires less detailed supervision. 48 Cal.3d at 356-57.  Accordingly, courts have held in the context of the freight and courier industries, "the simplicity of the work (take this package from point A to point B) ma[kes]

16

1   detailed supervision, or control, unnecessary." *Air Couriers Int'l v. Emp't Dev. Dep't*, 150

2   Cal.App.4th 923, 937 (2007); *Bowerman*, 242 F.Supp.3d at 939 (same).

3          While the right to control is the "most important" consideration, several secondary factors

4   may be relevant in determining if an employment relationship exists. *Ruiz*, 754 F.3d at 1100

5   (quoting *Borello*, 48 Cal.3d at 350) (internal quotations omitted). "Even if one or two of the

6   individual factors might suggest an [independent contractor] relationship, summary judgment is

7   nevertheless proper when … all the factors weighed and considered as a whole establish … an

8   [employment] and not an [independent contractor relationship.]" *Alexander*, 765 F.3d at 988.

9   **B.  Plaintiffs were CSXIT's Employees under California Law**

10          **1.  CSXIT Retained All Necessary Control over the Key Parts of the Business**

11          Evidence that a defendant controls the overall operations in which plaintiffs work can

12   establish that a defendant retains "all necessary control" for purposes of establishing employment.

13   *See Ruiz,* 754 F.3d at 1103 (employment status held where court found "Affinity 'retained absolute

14   overall control' over the key parts of the business," citing *Borello,* 48 Cal.3d at 355-56 (noting

15   grower's "pervasive control" over its operations as a whole supported finding that it "retains *all*

16   *necessary* control" over agricultural workers). The California Court of Appeal held in *JKH*

17   *Enterprises, Inc. v. Dep't of Indus. Rel.*,142 Cal.App.4th 1046 (2006), "By obtaining the clients in

18   need of the service and providing the workers to conduct it, JKH retained all *necessary* control

19   over the operation as a whole," which is enough to find an employment relationship "even in the

20   absence of JKH exercising control over the details of the work." *Id*. at 1064-65. *See also*

21   *Alexander,* 765 F.3d at 992-93 (FedEx retained "all necessary control" where it determined the

22   drivers' routes of service, what they delivered, and rates charged to the customers, and collected

23   payment from the customers); *Ruiz,* 754 F.3d at 1101 (finding the undisputed evidence showed

24   defendant "retained all necessary control over the drivers" where defendant set customer rates and

25   drivers' pay, assigned routes, and determined days of work ); *Bowerman*, 242 F.Supp.3d at 938-39

26   (finding "all necessary control" supported by undisputed evidence that defendant told plaintiff

27   where to go, when to go, what to do, when to get done, and how much and when they will paid for

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS
CASE NO. 3:15-cv-05433 EDL

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1    their efforts); *Garcia v. Seacon Logix, Inc.*, 238 Cal.App.4th 1476, 1485 (2015) (citing defendant

2    providing the customers and determining the prices to be charged as evidence of control).

3        CSXIT enjoyed pervasive control over its overall operations much like the defendants

4    found to be employers in the cases cited above. Plaintiffs serviced CSXIT's customers using

5    CSXIT's DOT authority; CSXIT determined what assignments to give to Plaintiffs, including

6    where to go, when, and what CSXIT container to take; and Plaintiffs had no role in setting

7    customer rates or invoicing those customers. Perhaps most significant, CSXIT unilaterally

8    determined the pay rates under which Plaintiffs were compensated. *See Ruiz*, 754 F.3d at 1101

9    ("Affinity set the drivers' flat "per stop" rate; the drivers could not negotiate for higher rates, as

10    independent contractors commonly can."); *Taylor v. Shippers Transp. Exp., Inc.*, No. CV 13-02092

11    BRO (PLAx), 2014 WL 7499046, *14, 17 (C.D. Cal. Sept. 30, 2014) (lack of negotiation on rates

12    consistent with employment status). Accordingly, as CSXIT's control over its overall operations

13    gave it all necessary control over Plaintiffs and their work, the Court should find Plaintiffs served

14    as CSXIT's employees as a matter of law.

15        **2.  CSXIT Retains All Necessary Control Over the Details of Plaintiffs' Work**

16        As the drayage services were inherently simple—transporting containers from point A to

17    point B—employment status can be found absent detailed control and supervision. *Borello,* 48

18    Cal.3d at 356-57; *Air Couriers*, 150 Cal.App.4th at 937. Nonetheless, the undisputed evidence

19    establishes that CSXIT retained extensive rights to control and monitor each of the significant steps

20    in the drayage process. *See Ayala*, 59 Cal.4th at 535 (the existence of the right of control and

21    ability to monitor is sufficient to establish employment status whether exercised or not).

22        Much of CSXIT's control and monitoring focused on drivers meeting the assigned delivery

23    times, which was CSXIT's key focus for servicing its customers, *see supra II.C.1, II.C.3,* and

24    central to CSXIT's right to control. *See Alexander*, 765 F.3d at 989-990 (FedEx controlled drivers

25    hours where it "structures drivers' workloads so that they have to work 9.5 to 11 hours every

26    working daily."); *Bowerman,* 242 F.Supp.3d at 939 (finding that FAS controlled when the work

27    was performed where "FAS requires work to be performed within three days of receiving a work

28    order."); *Villalpando,* 2015 WL 5179486, at *48 (citing defendant's setting of delivery times and

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1 locations as evidencing control); *Taylor*, 2014 WL 7499046, at *14 (finding that the company did

2 set drivers' schedules, consistent with employment status, where drivers had to be on time when

3 required, and "impose[d] an affirmative duty to check in daily"). Accordingly, Plaintiffs had to

4 document when: they arrived on site, were ready to depart with the assigned container, arrived at

5 the delivery site, completed the delivery and when they were ready to leave the delivery site. *See*

6 *supra II.C.1.* Further dispatch could—and did—remain in contact with the drivers throughout the

7 process, through cell phone and text messages, ensuring deliveries were timely. *Supra II.C.3.b.*

8 Electronic logging devices that CSXIT required Plaintiffs have in their trucks allowed further

9 monitoring of hours driven and tracking. *Supra II.C.3.b.* The Ninth Circuit has cited similar

10 evidence of electronic notification requirements and remote monitoring of deliveries as indicia of

11 truck drivers' employment status. *See Ruiz,* 754 F.3d at 1102; *Narayan,* 616 F.3d at 902. *See also*

12 *O'Connor v. Uber Techs*, 82 F.Supp.3d 1133, 1151-52 (N.D. Cal. 2015) (constant monitoring of

13 rides through Uber's application data "gives Uber a tremendous amount of control over the

14 'manner and means' of its drivers' performance," citing Michel Foucalt, *Discipline and Punish:*

15 *The Birth of the Prison* 201 (Alan Sheridan ed., 1979) (a "state of conscious and permanent

16 visibility [ ] assures the automatic functioning of power"); *Garcia,* 238 Cal.App.4th at 1485 (noting

17 regular contact to monitor the progress of deliveries as evidence of right to control truck drivers);

18 *Taylor*, 2014 WL 7499046, at *15 (noting capacity to track drivers' speed through GPS).

19     CSXIT also afforded itself broad work rule making authority through its form contract. *See*

20 *supra II.C.2.* Under the COLA, Plaintiffs were contractually required to comply with company

21 standards and instructions and meet customer service requirements. *Supra II.C.2-3.* The Ninth

22 Circuit and other courts have found defendants' authority to issue work-related policies and

23 procedures is a strong indicator of employment status. *Alexander,*765 F.3d at 990 (citing

24 contractual obligation to comply with FedEx's "standards of service" as evidence of control

25 rights); *Ruiz,* 754 F.3d at 1102 ("the provisions of the ITA [driver's agreement] and the Procedures

26 Manual demonstrate that Affinity retained the right to control its drivers"); *Narayan*, 616 F.3d at

27 901-02 (citing as evidence of employment status, instructions to drivers set forth in defendant's

28 "Safety and Compliance Manual and Drivers' Handbook" and the SOP agreements between EGL

19

1    and many of its customers); *Bowerman*, 242 F.Supp.3d at 940 (same); *Villalpando*, 2015 WL

2    5179486, *48 (imposing "safety requirements" on drivers "indicative of the fact that Exel retains

3    the right to exercise extensive control over its drivers"). CSXIT's retained right to terminate the

4    COLA if it believed a driver failed to comply with its standards and customer requirements, as

5    noted above, *see supra II.C.2-3.a,* provides powerful evidence of its right to control. *See Ayala,* 59

6    Cal.4th at 533 ("Whether a right of control exists may be measured by asking whether or not, if

7    instructions were given, they would have to be obeyed on pain of at-will discharge for

8    disobedience") (internal quotation marks and cites omitted); *Bowerman,* 242 F. Supp.3d at 929

9    (quoting *Ayala*).

10        The undisputable evidence of CSXIT's pervasive control over its operations as a whole and

11   its ability to track Plaintiffs' work and set work rules is more than sufficient to establish that

12   Plaintiffs served as CSXIT's employees as a matter of for purposes of California's wage and hour

13   provisions. *See Bowerman*, 242 F.Supp.3d at 942 (right to control analysis justified summary

14   judgment for plaintiffs "notwithstanding the conflicting secondary factors"); *Villalpando*, 2015 WL

15   5179486, at *49 ("In light of the undisputed facts establishing Exel's right to exercise extensive

16   control over how Plaintiffs perform their work, the Court finds that the evidence offered by Exel as

17   to *Borello*'s secondary factors is insufficient to defeat summary judgment that Plaintiffs are

18   employees.").

19   **C. The Secondary Factors Favor Plaintiffs' Employee Status**

20        While the right to control is the "most important" consideration, several secondary factors

21   may be relevant in determining if an employment relationship exists. *Ruiz*, 754 F.3d at 1100

22   (quoting *Borello,* 48 Cal.3d at 350) (internal quotations omitted). "Even if one or two of the

23   individual factors might suggest an [independent contractor] relationship, summary judgment is

24   nevertheless proper when … all the factors weighed and considered as a whole establish … an

25   [employment] and not an [independent contractor relationship.]" *Alexander*, 765 F.3d at 988

26   (finding no triable issue of fact as to employee status where only 5 of 9 secondary factors favored

27   the plaintiffs). Construing all facts in the light most favorable to CSXIT, the secondary factors

28   weigh heavily in favor of Plaintiffs' employee status.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169   FAX: (510) 272-0174

20

**CSXIT Has the Broad Right to Terminate**. It is undisputed that CSXIT retained broad rights to terminate Plaintiffs. It could terminate the COLAs on 15 and, later, 30-day notice without cause; or it could terminate the agreement if it believed the driver was in any way in breach, including for failure to comply with any rules it set. *Supra II.C.2-3.a.* Even the notice period was illusory, as Plaintiffs Green, Nora Ledesma and Valadez experienced. None received any assignments after CSXIT notified each about their terminations. *Supra II.B.* The termination rights that CSXIT enjoyed strongly support employment status. *See Narayan,* 616 F.3d at 902-03 (right to terminate on thirty-days' notice or for breach of agreement "is a substantial indicator of an at-will employment relationship"); *Ruiz,* 754 F.3d at 1102 (citing defendant's right to terminate drivers without cause with 60 days' notice as evidence of employment); *Taylor,* 2014 WL 7499046, at *12-13 (C.D. Cal. Sept. 30, 2014) (contract strongly supported employment where defendant enjoyed right to terminate immediately for breach, on 30 day notice without cause, or not renew without cause); *Ayala*, 59 Cal.4th at 531 ("Perhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because the power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities.") (internal quotations omitted); *Santa Cruz Transp. v. Unemployment Ins. Appeals Bd.*, 235 Cal.App.3d 1363,1372-73 (Cal. Ct. App. 1991) (indicia of control found in cab lease provision allowing for termination for "failure to maintain good public relations" and instructions on how to dress).

**Plaintiffs Are Not Engaged in a Distinct Occupation or Business**. As CSXIT operates a railway freight transportation system in which Plaintiffs transported CSXIT's containers carrying CSXIT's customer's freight to and from CSXIT terminals, Plaintiffs unquestionably performed work that is integral to CSXIT's regular business, as its corporate designee freely admitted. Further, Plaintiffs were required to operate their vehicles under CSXIT's DOT authority, bearing CSXIT's logos and identification, and using CSXIT's Dispatch application and forms to document their work. *Supra II.C.1-2.* Such evidence of integration and dependence strongly support employment status. *Alexander*, 765 F.3d at 995 (where worked performed by drivers is wholly integrated into FedEx's operation, where drivers looked and acted like FedEx's employees, where

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS

CASE NO. 3:15-cv-05433 EDL

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1   the customers were FedEx's customers); *Ruiz*, 754 F.3d at 1104 (distinct business factor favored

2   employees where drivers could only use their trucks in service to defendant); *Narayan*, 616 F.3d at

3   902 (citing requirement that vehicles bear defendant's logos as indicia of employment); *Garcia*,

4   238 Cal.App.4th at 1487 (no distinction between driver's work and defendant's primary business

5   of delivering cargo favored employment status); *Santa Cruz Transp.*, 235 Cal.App.3d at 1373

6   (employment status supported by the fact that driver was dependent on cab company for his

7   livelihood).

8        **Whether the Work Requires Special Skill.** CSXIT's minimum job requirements and

9   admissions establish that the drayage truck driving position required no special education or

10  training, only a commercial driver's license and a preference for prior experience as a truck driver.

11  *Supra II.C.1, 3.c.* This factor thus bears little on employment status. *See Garcia,* 238 Cal.App.4th

12  at 1487 ("class A [commercial] license, but little other skill" did not favor either party).

13       **Plaintiffs Performed the Work under CSXIT's Direction**. CSXIT dispatched each

14  assignment to Plaintiffs and then required them to document electronically each step of the

15  transport in CSXIT's system, and, through the tablets and cell phones, Plaintiffs remained in

16  constant contact with CSXIT's dispatchers via text messages and calls. *Supra II.C.3.b.* This

17  allowed CSXIT to constantly monitor and direct Plaintiffs' work. Also under the COLA, Plaintiffs

18  were required to comply with CSXIT's rules and customer requirements, *supra II.C.3.a*, which

19  gave CSXIT the right to direct Plaintiffs' drayage work.  *See Alexander,* 765 F.3d at 995 (factor

20  favored drivers, despite freedom in their work, where FedEx also closely supervised drivers

21  through various methods); *Ruiz,* 754 F.3d at 1102, 1104 (finding work performed under

22  defendant's supervision where company monitored progress of work by requiring drivers to check

23  in after every few stops supported); *Garcia*, 238 Cal.App.4th at 1487 (defendant's control over

24  work hours and assignments and monitoring the progress of the work supported finding that driver

25  worked under defendant's direction). This factor also favors employee status. Finally, as noted

26  above, CSXIT controlled all meaningful aspects of the economic relationship, including what

27  assignments to give to Plaintiffs and the pay for the assignments. And it was CSXIT that made all

28  economic arrangements with the customers. Such factors weigh heavily for employment. *See*

22

*Bowerman*, 242 F.Supp.3d at 943 (citing *Borello*, 48 Cal.3d at 356).

**CSXIT Provides the Instrumentalities and Place of Work**. Plaintiffs worked from CSXIT's terminals, which evidences employment status. *Ayala,* 59 Cal.4th at 538. CSXIT also provided the chassis and its containers that Plaintiffs' transported. It required Plaintiffs use a Galaxy tablet, and provided the CSXIT-specific system/software that linked up with CSXIT's computer-based dispatch and tracking system. *Supra II.C.3.b.* These facts favor employee status. *Ruiz*, 754 F.3d at 1104 (where Affinity advanced drivers' costs of leasing and maintain their tools, and where Affinity required drivers to use a specific type of phone and deducted the expense from drivers' paychecks, this factor favored employee status). While Plaintiffs paid for all vehicle-related expenses and required insurance, they often did so through vendors recommended by CSXIT. *Compare Alexander* 765 F.3d at 995 (noting that "numerous California cases find employee status even though the employee provides his own vehicle or tools").

**Service Is Long-Term and Indefinite**. Most Plaintiffs performed deliveries for CSXIT for many years—Temblador worked for CSXIT for over two decades, the Ledesmas each worked for over a decade, and Valadez worked for approximately eight years. *Supra II.B. Air Couriers*, 150 Cal.App.4th at 938 (finding drivers' "lengthy tenures ... inconsistent with independent contractor status"); *Alexander* 765 F.3d at 996 (indefinite relationships are inconsistent with independent contractor status). Plaintiffs' COLAs[10] provided for automatic renewal, and contained general terms that suggest this was a long-term engagement. This factor favors employee status. *Narayan*, 616 F.3d at 902-03 ("Significantly, the contracts signed by the plaintiff Drivers contained automatic renewal clauses and could be terminated by either party upon thirty-days' notice or upon breach of the agreement. Such an agreement is a substantial indicator of an at-will employment relationship."); *Ruiz*, 754 F.3d at 1104 ("there was no contemplated end to the service relationship when Affinity and the drivers signed their contracts, and drivers often stayed with Affinity for years"); *Bowerman,* 242 F.Supp.3d at 944 (vendors hired for indefinite period, not linked to any particular job, supports employment.).

---

[10] Except for Plaintiff Temblador's last COLA signed in 2015.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

**CSXIT Paid Plaintiffs a Regular Rate of Pay.** CSXIT paid Plaintiffs weekly, through weekly settlement statements. The pay was based on a tariff formula, factoring in distance and weight, which CSXIT unilaterally determined. This pay could be increased based on "accessorials," which are additional fees tied to the type of freight carried and/or additional services required other than transporting the container from point A to B. *Supra II.C.4.* This pay method is nearly identical to the one at issue in *Narayan,* which the Ninth Circuit found to favor employee status. *Narayan,* 616 F.3d at 904. *See also Ruiz,* 754 F.3d at 1104-05 (pay favored employment, where drivers paid for each delivery but performed several deliveries in a day).

**Plaintiffs' Work Was Part of CSXIT' Regular Business**. Plaintiffs' drayage work was unquestionably part of CSXIT's business, as it was integral to the freight transportation services CSXIT provides its customers. *Alexander*, 765 F.3d at 996 (drivers perform the pickup and delivery of packages, which is "essential to FedEx's core business"); *Ruiz*, 754 F.3d at 1105 (agreeing with the district court's finding that Defendant's drivers "perform those very home delivery services that are the core of [Defendant's] regular business."); *Bowerman,* 242 F.Supp.3d at 945 (vendors performed very services for which defendant exists, favoring employment). Such integration of the Plaintiffs into the heart of CSXIT's business is a "strong indicator" that CSXIT functions as an employer. *Borello,* 48 Cal.3d at 357.

**The Contract Label is Immaterial.** The COLA classified Plaintiffs as "independent contractors." While this label suggests that the parties, at the outset of their agreement, intended to enter into an independent contractor relationship, "the parties' label is not dispositive and will be ignored if their actual conduct establishes a different relationship." *Ruiz*, 754 F.3d at 1105. *See also Alexander*, 765 F.3d at 997 (finding "'neither [FedEx]'s nor the drivers' own perception of their relationship as one of independent contracting' is dispositive").

As the undisputable facts show CSXIT's extensive right to control and that nearly every secondary factors indicates employment status, CSXIT's independent contractor defense fails as a matter of California law.

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

**IV.     CONCLUSION**

       For the reasons set forth above, Plaintiffs' motion for partial summary judgment should be granted.

DATED:  January 30, 2018                    LEONARD CARDER, LLP

                                         THE CULLEN LAW FIRM, APC


                                         By:   /s/ *Aaron Kaufmann*
                                             AARON KAUFMANN

                                       *Attorneys for Plaintiffs*

                                       *MIGUEL VALADEZ, NORA LEDESMA, MANUEL LEDESMA, and ELEAQUIN TEMBLADOR and ANTHONY GREEN, SR.*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EMPLOYMENT STATUS
CASE NO. 3:15-cv-05433 EDL