Amanda C. Sommerfeld (SBN 185052)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA  90071
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539
Email:       asommerfeld@jonesday.com

Matthew W. Lampe (admitted *pro hac vice*)
JONES DAY
250 Vesey Street, New York, NY 10281
Telephone:  (212) 326-3939
Facsimile:   (212) 755-7306
Email: mwlampe@jonesday.com

Allison E. Crow (SBN 279078)
JONES DAY
555 California St., 26th Floor,
San Francisco, CA  94104
Telephone:  (415) 626-3939
Facsimile:   (415) 875-5700
Email:       acrow@jonesday.com

Attorneys for Defendant
CSX INTERMODAL TERMINALS, INC.

Aaron Kaufmann (SBN 148580)
David Pogrel (SBN 203787)
Elizabeth Gropman (SBN 294156)
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, California 94612
Tel: (510) 272-0169
Fax: (510) 272-0174
Email: akaufmann@leonardcarder.com
Email: dpogrel@leonardcarder.com
Email: egropman@leonardcarder.com

Paul T. Cullen (SBN 193575)
THE CULLEN LAW FIRM, APC
19360 Rinaldi Street, Box 647
Porter Ranch, California 91326
Tel: (818) 360-2529
Fax: (866) 794-5741
Email: paul@cullenlegal.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL VALADEZ, et al.<br><br>            Plaintiffs,<br><br>        v.<br><br>CSX INTERMODAL TERMINALS, INC., and DOES 1 to 10 inclusive,<br><br>            Defendants. | **Case No.:  3:15-cv-05433-AGT**<br>**Related Case Nos:  3:16-cv-05237-AGT**<br>**                        3:17-cv-02147-AGT**<br><br>**Judge:  Hon. Alex G. Tse**<br><br>**STIPULATION AND REQUEST FOR CONDITIONAL APPROVAL OF PAGA SETTLEMENT** |

The parties, through their counsel of record, seek conditional approval of a settlement of the Eighth Cause of Action in the operative complaint in this matter (Dkt. 61), which is a claim for penalties under the California Private Attorney General Act, Labor Code 2699 ("PAGA"). In support of that request, the parties STIPULATE as follows:

1.      The parties to the present action and to *Goyal et al. v. CSX Intermodal Terminals, Inc.,* Case No. 3:17-CV-06081-EMC, have agreed in principle to enter into a global settlement. This settlement includes resolution of Plaintiff Eleaquin Temblador's representative claim for PAGA penalties (hereafter the "PAGA Action") alleged in the Fourth Amended Complaint filed in this matter. All of the claims in the present matter and in *Goyal* are premised on the central allegation that Defendant CSXIT misclassified plaintiffs as "independent contractors."

2.      Plaintiffs' counsel Paul Cullen separately represents[1] one individual plaintiff in *Briceno v. CSX Intermodal Terminals, Inc.*, Case No. 3:17-CV-02147-AGT and one individual plaintiff in *Ledesma v. CSX Intermodal Terminals, Inc.*, Case No. 3:16-CV-05237-AGT. Those matters involve wrongful termination claims, and feature the same allegation of "independent contractor" misclassification averred in the present matter and in *Goyal.* The parties in *Briceno* and *Ledesma* negotiated settlements separate from the settlement of the present matter and *Goyal.*

3.      The global settlement will require resolution of all of the above identified actions, which will require, among other things, execution of individual settlement agreements for each of the plaintiffs in the above-referenced matters.

4.      As a first step in carrying out the proposed global settlement, the parties now seek this Court's conditional approval of the settlement of the PAGA Action for penalties. Those penalties are sought on behalf of the State of California and on behalf of "PAGA Action Members" consisting of 59 individuals who were each a signatory to a "Contractor Operating and Lease Agreement" ("COLA") with CSXIT under which they personally provided drayage services as an owner-operator in California between October 5, 2015 (i.e. one year prior to Plaintiff Temblador's PAGA notice) and September 15, 2016 (the date when CSXIT discontinued using services of independent

---

[1] Plaintiffs in this matter are represented by attorneys from Leonard Carder, LLP and Mr. Cullen's law firm. Leonard Carder do not represent plaintiffs in the wrongful termination actions referenced here.

**STIPULATION FOR CONDITIONAL APPROVAL**
**OF PAGA SETTLEMENT**                                    **CASE NO.:  3:15-CV-05433-AGT**

contractor owner-operators in California) (the "PAGA Period").

5.      Upon conditional approval of this Court, the Parties shall promptly notify the California Labor and Workforce Development Agency ("LWDA") of the pending settlement as required by the PAGA.

**SETTLEMENT TERMS**

6.      The parties have agreed to resolve the PAGA Action for $80,000 (the "PAGA Settlement Amount") under terms detailed in a "Settlement Agreement and Release of Private Attorneys General Act ("PAGA") Claim" executed by the parties and attached hereto as Exhibit 1.  ("PAGA Settlement Agreement").

7.      In recognition of PAGA's allocation requirements for recovered penalties, Labor Code § 2699(i), and the right to attorneys' fees and costs for "any employee who prevails" on a PAGA claim, Labor Code § 2699(g)(1), the parties seek to allocate distribution of the PAGA Settlement Amount as follows:

     (1)      $50,000 for distribution to the LWDA and the alleged aggrieved employees, with

          a.      75% thereof (i.e. $37,500) paid to the LWDA, and

          b.      25% thereof (i.e. $12,500) distributed  to each of the PAGA Action Members based on the number of full or partial weeks in which they provided services during the PAGA Period;

     (2)      $20,000 paid to Plaintiffs' Counsel for reasonable attorneys' fees;

     (3)      $5,000 for claims administration; and

     (4)      $5,000 for costs incurred by Plaintiffs' Counsel.

8.      In exchange for the PAGA Settlement Amount, Plaintiff Temblador, on behalf of himself and the PAGA Action Members, will release CSXIT and its affiliated entities from liability for any and all claims under PAGA related to the alleged unlawful classification of PAGA Action Members as independent contractors. The release will cover any alleged PAGA violations that arise from the operative facts pled in the complaint and implicate the same primary rights and defenses as raised by the complaint allegations.

//

**LITIGATION HISTORY**

9.      This case shares with the *Briceno, Ledesma,* and *Goyal* cases the same gateway issue--whether the drayage drivers served as CSXIT's employees and as such were entitled to the protections of the California wage orders and Labor Code. Consequently, litigation efforts of these matters have been intertwined.

10.      The present action, filed on September 30, 2015, was the first of these cases to be filed.

11.      On December 20, 2016, Plaintiff Temblador subsequently added a PAGA representative claim as the Eighth Cause of Action in the Fourth Amended Complaint. Dkt. # 61.

12.      The parties in the present action participated in an all-day mediation with private mediator Mark Rudy on September 8, 2016, but did not reach a settlement.

13.      On April 10, 2017, the Court issued its "Order Granting in Part and Denying in Part Defendant's Preemption Motion." Dkt. #76.  In that Order the Court ruled that the Federal Aviation Administration Authorization Act ("FAAAA") did not preempt Plaintiffs' claims. However, the Court did hold that the federal Truth-in-Leasing ("TIL") regulations preempted nearly all of the work-related items for which Plaintiffs sought reimbursement. This ruling reduced Plaintiffs' potential recovery substantially.

14.      Recognizing that the TIL preemption ruling would greatly limit the potential recovery for the putative class (absent a reversal on appeal from judgment), Plaintiffs' counsel elected to dismiss the class allegations; Defendant and the Court agreed to dismiss the class allegations. Dkt. #96.

15.      Subsequently, many of the absent class members in the present action filed as individual plaintiffs in a new action, *Goyal*, which is before Judge Edward Chen. The *Goyal* action brings the same substantive claims that had initially been averred as class claims in the present action.

16.      On January 30, 2018, Plaintiffs moved for partial summary judgment on the question of employment status under the *Borello* "right to control" test. Finding triable issues under the *Borello* factors, the Court denied that motion on March 27, 2018. Dkt. #135.

17.      In light of the California Supreme Court's decision in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903 (2018), which issued on April 30, 2018, Plaintiffs, on May 17, 2018, sought reconsideration of the Court's ruling on employment status. After full briefing, the Court

heard the reconsideration motion on September 4, 2018 and took the matter under consideration. Dkt. #155.

18.     With the employment status question still pending, the parties participated in another all-day mediation with mediator David Rotman on January 11, 2019. Again, no settlement was reached.

19.     On January 24, 2019, the Court issued its "Order Directing the Parties to File Supplemental briefing on Plaintiffs' Motion for Reconsideration of Court's Order Denying Plaintiffs' Motion for Summary Judgment," in order to address whether the FAAAA preempted the ABC test for employment status announced in *Dynamex*. Dkt. #165.

20.     After full briefing and another hearing, the Court, on March 15, 2019, denied Plaintiffs' Motion for Reconsideration, holding that the FAAAA preempted Part B of the ABC Test. Dkt. #169. Subsequently, the Court also denied Plaintiffs' request for interlocutory appellate review of this ruling. Dkt. #178.

21.     In light of Judge Chen's ruling in the *Goyal* case that the TIL did not preempt any of plaintiffs' claims, Plaintiffs herein sought the Court's reconsideration of its earlier ruling finding preemption. The Court denied that request on March 4, 2019. Dkt. #168.

22.     In addition to the extensive motion work in this case (of which the above narrative only captures a portion), the parties conducted significant discovery, including several rounds of written discovery (interrogatories, production requests, and requests for admission) by both sides, and nine depositions.

23.     With the help of mediator David Rotman, the parties reconvened settlement negotiations in late April 2019. After extensive negotiations through telephone conversations and correspondence, both with Mr. Rotman as mediator and in direct talks, the parties, on September 27, 2019, reached a tentative agreement as to a total sum for settling all claims in the present matter along with all claims asserted in *Goyal*. Since that time, the parties' counsel have been negotiating, drafting, and editing the detailed terms for the global settlement contained in numerous settlement documents, including a Memorandum of Understanding, the PAGA Settlement Agreement, and the many individual settlement agreements for plaintiffs in the present matter and in *Goyal*.

//

STIPULATION FOR CONDITIONAL APPROVAL
OF PAGA SETTLEMENT                                    CASE NO.:  3:15-CV-05433-AGT

**ADEQUACY OF THE PAGA SETTLEMENT**

24.     Plaintiffs' Counsel are of the opinion that the amount and terms of the PAGA Settlement are fair, reasonable, and adequate and in the best interest of the State of California and the PAGA Action Members. This opinion is based on the extensive discovery and investigation of the claims and defenses in this case, the Court's prior rulings, and the unsettled questions of law directly relevant to this case (including whether the *Dynamex* ABC test applies retroactively, which is currently pending with the California Supreme Court, and a split of authority as to whether the ABC test is preempted in whole or in part by federal law). Plaintiffs' Counsel have also factored in the risks of potentially losing the PAGA claim, of potentially winning on the merits but having the Court exercise its discretion to not award the maximum penalty amount,[2] and delay in payment to the State and to the PAGA Action Members.

25.     Plaintiffs' estimate of the maximum, aggregate potential value of the PAGA claims asserted by Mr. Temblador is approximately $1,259,000. This amount was derived from a review of CSXIT's records showing the number of days in which PAGA Action Members worked during the time period where potential liability lay. Plaintiffs' Counsel were provided with records by CSXIT from which the number of weeks of service for each PAGA Action Member could be ascertained and had sufficient time to review and verify the accuracy of that information prior to Plaintiff executing the PAGA Settlement Agreement. Plaintiffs determined that there were approximately 2,518 PAGA-eligible pay periods and then multiplied that number by the five PAGA-eligible violations per pay period by $100 per alleged violation. At $80,000, the amount to be paid in settlement represents approximately 6.4% of the amount Plaintiffs believed to be the best-case scenario for the PAGA claims.

26.     There are 59 PAGA Action Members who will be entitled to partake in the settlement of the PAGA claims, with an average award being approximately $212 (i.e. $12,500 divided by 59). 45 of

[2] PAGA gives the Court the power to "exercise its discretion to award lesser penalties based on the enumerated considerations." *Thurman v. Bayshore Transit Mgmt., Inc.* (2012) 203 Cal.App.4th 1112, 1135; see also Labor Code § 2699(e)(2) (providing that "a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory").

the 59 PAGA Action Members are also plaintiffs pursuing wage and hour claims in this action or in *Goyal*, and stand to recover substantial sums on those claims should the global settlement be realized.

**REQUEST FOR CONDITIONAL SETTLEMENT APPROVAL**

Based upon the above and, in order to facilitate the settlement process, the parties HEREBY REQUEST that the Court grant conditional approval of the settlement of the PAGA Action on the terms set forth in the PAGA Settlement Agreement attached hereto as Exhibit 1, and conditioning approval on confirmation by Plaintiffs' Counsel of the following:

    a.   that Plaintiffs' Counsel have given notice to the LWDA of this Court's conditional approval of the proposed settlement by having uploaded the same on the LWDA website, and

        that 28 calendar days have elapsed since said notification was made, and

    b.   that the LWDA has not notified any of the parties' counsel of any objection it may have to the proposed settlement.

    c.   All other settlement agreements have been effectuated according to their terms.

Respectfully submitted,

Dated:  3/5/2020

LEONARD CARDER, LLP

By: ____/s/ Aaron Kaufmann_____
    Aaron Kaufmann
    David P. Pogrel

Attorneys for Plaintiffs

Dated:  3/5/2020

THE CULLEN LAW FIRM, APC

By: ____/s/ Paul T. Cullen_____
    Paul T. Cullen

Attorneys for Plaintiffs

1

Dated:  3/5/2020                                     JONES DAY

2
                                                     By:     /s/ Amanda C. Sommerfeld
3                                                        Amanda C. Sommerfeld
                                                         Matthew W. Lampe (*pro hac vice*)
4                                                        Allison E. Crow

5
                                                     Attorneys for Defendant
6                                                    CSX INTERMODAL TERMINALS, INC.

7

8
                                    **SIGNATURE ATTESTATION**
9

10          I, Paul T. Cullen, am the ECF User whose identification and password are being used to

11   file this joint report. I hereby attest that all signatories hereto concurred in and authorized this

12   filing.

13                                                                          */s./ Paul T. Cullen*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATION FOR CONDITIONAL APPROVAL
OF PAGA SETTLEMENT**                                    **CASE NO.:  3:15-CV-05433-AGT**

# SETTLEMENT AGREEMENT
# AND RELEASE OF PRIVATE ATTORNEYS GENERAL ACT CLAIM

This Settlement Agreement and Release of Private Attorneys General Act Claim ("Agreement") is made and entered into by CSX Intermodal Terminals, Inc. ("CSXIT" or "Defendant") and Eleaquin Temblador ("Temblador" or "Plaintiff"). Plaintiff and CSXIT are referred to collectively herein as the "Parties."

It is hereby agreed by and among the undersigned Parties, that the settlement of the claim under the Private Attorneys General Act ("PAGA Claim") in the action titled *Miguel Valadez et al. v. CSX Intermodal Terminals, Inc.*, Case No. 3:15-cv-05433-AGT in the U.S. District Court for the Northern District of California ("Court") (the "*Valadez* Action") will be effectuated subject to the following terms and conditions, including the Court's approval of the settlement of the PAGA Claim settled herein by Temblador on behalf of himself and on behalf of the aggrieved employees he represents ("PAGA Members" as defined below) and the State of California.

1.  Background.

    (a)     The *Valadez* Action was initiated as a class action on September 30, 2015. Temblador subsequently added a representative claim pursuant to the Private Attorneys General Act of 2004 (Cal. Labor Code § 2698 et seq.) ("PAGA"), based on alleged violations of the Labor Code previously asserted by him in a letter to the State of California Labor and Workforce Development Agency ("LWDA") on October 4, 2016 ("PAGA Letter"). Temblador brought the PAGA Claim on behalf of himself, the State of California, and other PAGA Members. "**PAGA Member**" means an individual who was a signatory to a Contractor Operating and Lease Agreement with CSXIT under which he or she personally provided drayage services as an owner-operator in California between October 5, 2015 and September 15, 2016 (the "PAGA Period").

    (b)     The class allegations were dismissed in September 2017. Through this litigation, the Parties have engaged in significant discovery, including written discovery and depositions. The Parties reached this settlement, including the settlement of the PAGA Claim, only after such discovery and investigation was performed, and following two mediations with two different, experienced mediators. Based on the discovery and investigation conducted, Temblador and Plaintiffs' Counsel are of the opinion that the settlement with CSXIT for the consideration and on the terms set forth in this Agreement is fair, reasonable, and adequate and is in the best interest of the State of California and the PAGA Members in light of all known facts and circumstances, including the risk of delay and uncertainty associated with litigation of the PAGA Claim, the defenses asserted by CSXIT, and potential appellate issues. ("Plaintiffs' Counsel" are: Aaron Kaufmann and David Pogrel of Leonard Carder LLP and Paul Cullen of The Cullen Law Firm.) CSXIT and CSXIT's Counsel also agree that the settlement is fair and reasonable and is in the best interests of CSXIT. ("CSXIT's Counsel" are: Matthew W. Lampe, Amanda C. Sommerfeld and Allison E. Crow of Jones Day.)

    (c)     This Agreement contemplates the entry of an order by the Court approving the payment allocated for settlement of the PAGA Claim. This Agreement shall be void and

DocuSign Envelope ID: 13CCE51E-210B-4C5E-99EE-A65DE090240R

unenforceable if the Court should for any reason fail to approve this settlement of the PAGA Claim in the form agreed to by the Parties in the proposed order submitted to the Court. If the Court should not approve this settlement, the Parties will work in good faith to submit additional information to the Court to attempt to obtain approval of the settlement.

(d)     The Parties agree to mutually select and use the services of a third-party administrator ("Administrator") to administer the distribution of the payments described herein. The cost of the Administrator shall be paid from the Total PAGA Settlement Amount.

2.     <u>Conditions of Settlement</u>. This Agreement settles Plaintiff's PAGA Claim against CSXIT. Plaintiff expressly acknowledges that this Agreement is not effective or enforceable unless and until all of the following conditions have been met:

(a)     Plaintiff has executed this Agreement;

(b)     CSXIT's Counsel have received executed IRS Form W-9s from Plaintiff and Plaintiffs' Counsel;

(c)     The Court has issued an order granting approval of the settlement of the representative PAGA Claim asserted in the *Valadez* Action;

(d)     Each individual named plaintiff in the *Valadez* Action - Miguel Valadez, Manuel Ledesma, Nora Ledesma, Anthony Green and Plaintiff Temblador - has executed a settlement agreement and general release of all claims, including the claims asserted in the *Valadez* Action, except that named plaintiff Nora Ledesma in the *Valadez* Action will execute a general release that excludes the claims in the *Ledesma* Action (as defined below), which will be released pursuant to the settlement referenced immediately below;

(e)     CSXIT's Counsel have received an executed dismissal with prejudice of the *Valadez* Action (or the equivalent thereof), which shall not be filed until CSXIT has funded the settlement(s);

(f)     Each individual named plaintiff in the action titled *Anil Goyal, et al. v. CSX Intermodal Terminals, Inc.*, Case No. 3:17-cv-06081-EMC (the "*Goyal* Action") has executed a settlement agreement and general release of all claims, including the claims asserted in the *Goyal* Action, except that named plaintiff Armando Briceno in the *Goyal* Action will execute a general release that excludes the claims in the *Briceno* Action (as defined below), which will be released pursuant to the settlement referenced immediately below;

(g)     CSXIT's Counsel have received an executed dismissal with prejudice of the *Goyal* Action (or the equivalent thereof), which will not be filed until CSXIT has funded the settlement(s);

(h)     The individual named plaintiff in the related action titled *Armando Briceno v. CSX Intermodal Terminals, Inc.*, Case No. 3:17-cv-02147-AGT (the "Briceno Action") has executed a settlement agreement and general release of all claims, including all claims asserted in the *Briceno* Action, but not including any claims asserted on behalf of Armando Briceno in the *Goyal* Action;

(i)      CSXIT's Counsel have received an executed dismissal with prejudice of the *Briceno* Action (or the equivalent thereof), which will not be filed until CSXIT has funded the settlement(s);

(j)      The individual named plaintiff in the related action titled *Nora Ledesma v. CSXIT*, Case No. 3:16-cv-05237-AGT (the "Ledesma Action") has executed a settlement agreement and general release of claims, including all claims asserted in the *Ledesma* Action, but not including any claims asserted on behalf of Nora Ledesma in the *Valadez* Action.

(k)      CSXIT's Counsel has received a dismissal with prejudice of the *Ledesma* Action (or the equivalent thereof), which will not be filed until CSXIT has funded the settlement(s).

(l)      Any revocation period provided in the settlement agreements described above in Sections 2(d), 2(f), 2(h), or 2(i) has expired without the settlement agreement being revoked.

(m)      The effective date of this Agreement shall be the day on which the latest of all of the conditions defined in this Section 2 have been met ("Effective Date").

3.      <u>Approval and Implementation of Settlement</u>.

(a)      The Parties will cooperate in obtaining through a written stipulation or unopposed motion an order from the Court approving the payment of the Total PAGA Settlement Amount (as defined below) as described in this Agreement at the earliest possible date. Temblador and Plaintiffs' Counsel shall be responsible for the concurrent submission of this Agreement and the stipulation regarding settlement approval to the LWDA as required by the PAGA and any subsequent necessary submissions to the LWDA required by the PAGA.

(b)      The total amount to be paid by CSXIT to fully settle and resolve the PAGA Claim in the *Valadez* Action is $80,000.00 ("Total PAGA Settlement Amount"), which shall be paid as provided below.

4.      <u>Payment of Administration Expenses</u>.

(a)      Administration expenses shall be paid from the Total PAGA Settlement Amount and shall not exceed $5,000.00 ("Administration Fees"). The Parties agree to retain Simpluris, Inc. ("Administrator") to serve as the Administrator in this matter. If the Administration Fees for the combined administration of settlement detailed herein, and also individual settlements in the *Valadez* Action and *Goyal* Action, are less than the estimated amount of $5,000, the remainder will be distributed amongst the PAGA Members pursuant to the allocation formula set forth in Section 6(b), below. If the Administration Fees for the combined administration of settlement detailed herein, and also individual settlements in the *Valadez* Action and *Goyal* Action, exceed the estimated amount of $5,000, the additional Administration Fees shall be funded by the settlement funds in the *Valadez* Action and *Goyal* Action.

    5.    <u>Payment of Attorneys' Fees and Litigation Expenses</u>.

    (a)    Plaintiff, by signing below, agrees and acknowledges that Plaintiffs' Counsel may apply to the Court for up to $20,000 of the Total PAGA Settlement Amount as attorneys' fees and for $5,000.00 as litigation expenses (for a total of $25,000 referred to herein as "PAGA Fees and Cost Amount") pursuant to PAGA, which provides for the recovery of attorneys' fees and costs. Should the Court order an amount lower than the $25,000 PAGA Fees and Costs Amount above, the remainder will be distributed amongst the PAGA Members pursuant to the allocation formula set forth in Section 6(b), below.

    (b)    Plaintiffs' Counsel agrees that these payments will be reported on Form 1099, as designated and allocated by Plaintiffs' Counsel and communicated confidentially to the Administrator.

    6.    <u>Settlement of PAGA Claim</u>.

    (a)    The Total PAGA Settlement Amount shall resolve and fully satisfy any and all amounts owed to Temblador as the PAGA Representative, the PAGA Members, the State of California, and Plaintiffs' Counsel, in settlement of the claims that are asserted, or could have been asserted, in either the PAGA Letter submitted by Temblador or the PAGA Claim asserted in the *Valadez* Action. The Parties agree that there are no circumstances that would require CSXIT to pay any amount greater than the Total PAGA Settlement Amount in connection with the settlement of the PAGA Claim under this Agreement. In the event that this Agreement is canceled, rescinded, terminated, voided or nullified, however that may occur, or the settlement is barred by operation of law, invalidated, or ordered not to be carried out by a court of competent jurisdiction, CSXIT shall have no obligation to pay any of the Total PAGA Settlement Amount and the Parties' respective positions shall be restored to positions prior to mediation. Further, in that event, nothing in this Agreement, the negotiations leading to this settlement, nor any papers prepared in connection with this Agreement shall be admissible in any proceeding for any purpose.

    (b)    The total sum available for payment of PAGA penalties shall be calculated by deducting the PAGA Fees and Cost Amount and Administration Fees from the $80,000 Total PAGA Settlement Amount (this will yield the "Net PAGA Settlement Amount," which will be $50,000 if the Court awards the requested PAGA Fees and Cost Amount and Administration Fees). The Net PAGA Settlement Amount shall be distributed and paid as follows by the Administrator:

    (i)    The Net PAGA Settlement Amount will be distributed in two parts: (1) 25% (estimated at $12,500) to be distributed to the PAGA Members as described below ("PAGA Member Portion"), and 75% (estimated at $37,500) to be distributed to the LWDA ("LWDA Penalty Payment").

    (ii)    The PAGA Member Portion will be distributed as follows:

    (A)    Each PAGA Member's total weeks of service during the PAGA Period shall be divided by the sum of the total weeks of service of all PAGA Members during the PAGA Period, which shall

DocuSign Envelope ID: 130CE51E-310B-4CFE-98EE-A65DE090240B

result in a proportional amount which, when multiplied by the PAGA Member Portion, shall represent each PAGA Member's individual payment ("PAGA Member Payment").

(B)     If any PAGA Member receives a PAGA Member Payment in excess of $600, such PAGA Member Payments will be reported on a Form 1099-MISC and will not be subject to tax withholdings. PAGA Member Payments under $600 shall not be reported.

7.     <u>Timing of Payments and Distribution Process.</u>

(a)     Defendant will transmit to the Administrator the Total PAGA Settlement Amount within twenty (20) days after the latest of all of the following has occurred: (i) the Court has approved the settlement of the PAGA Claim set forth herein; (ii) this Agreement has been executed by all Parties; (iii) all Plaintiffs named in the *Goyal* Action and *Valadez* Action have executed individual settlement agreements including a release of claims for the settlement of the claims asserted in the *Goyal* Action and *Valadez* Action as provided herein; (iv) Nora Ledesma has executed a settlement agreement providing for the settlement and dismissal with prejudice of the *Ledesma* Action; (v) Armando Briceno has executed a settlement agreement providing for the settlement and dismissal with prejudice of the *Briceno* Action; (vi) executed dismissals for the *Valadez, Goyal, Ledesma,* and *Briceno* Actions have been delivered by Plaintiffs' Counsel to CSXIT's Counsel; (vii) the revocation periods in all of the above agreements have expired without any Plaintiff revoking any agreement; and (viii) Plaintiffs' Counsel has provided the information regarding each PAGA Member to the Administrator, as provided below in Section 7(b).

(b)     On or before January 31, 2020, Defendant shall transmit to Plaintiffs' Counsel the following information for all PAGA Members: (i) last known physical address on file with Defendant in its regularly maintained records; (ii) social security number or taxpayer identification number; and (iii) the information on file in its regularly maintained records from which the number of weeks of service during the PAGA Period may be ascertained for each PAGA Member.  Plaintiffs' Counsel shall have twenty-one (21) days from receipt of this information to examine and verify its accuracy before communicating the last known addresses, social security/taxpayer ID numbers, and the total weeks of service for each PAGA Member to the Administrator.  The Parties agree that they will not challenge the accuracy of the PAGA Member service weeks once that information is transmitted to the Administrator.

(c)     Within ten (10) business days of receipt of the Total PAGA Settlement Amount, the Administrator will disburse PAGA Member Payments to each PAGA Member via regular United States Mail, to the last known physical address provided to the Administrator pursuant to Section 7(b), except that first the Administrator will perform a search based on the National Change of Address Database information to update and correct for any known or identifiable address changes. The mailing of each PAGA Member Payment shall include a cover letter in the form of Exhibit A, hereto. If an updated address is obtained by way of a forwarding address on a returned check, then the Administrator will promptly re-mail the original check and cover letter to the forwarding address via first class U.S. Mail. If a check is returned as

5 of 9

DocuSign Envelope ID: 13CE51E310B4C5E89EEA55DE09024BB

undeliverable, without a forwarding address, the Administrator will perform a single skip-trace search to obtain an updated address, and promptly re-mail the original check and cover letter by first class U.S. Mail to any updated addresses located. The Administrator is only required to re-mail a check once. Such mailing as described in this paragraph shall be conclusive evidence of payment of the PAGA Member Payments, and shall satisfy any and all due process requirements.

(d)      Any checks issued for PAGA Member Payments shall remain valid and negotiable 120 calendar days from the date of their first issuance. All checks that have not been cashed or deposited into an account within 120 calendar days, shall be voided and funds associated with such voided checks plus any accrued interest that has not otherwise been distributed, shall be deposited with the California Department of Industrial Relations Unpaid Wages Fund, to be held in the name of the PAGA Member.

(e)      Within ten (10) business days after receipt of the Total PAGA Settlement Amount, the Administrator will send a check to the LWDA as and for the LWDA Penalty Payment.

(f)      Within ten (10) business days of receipt of Total PAGA Settlement Amount, the Administrator will disburse from the Total PAGA Settlement Amount the court-approved PAGA Fees and Cost Amount, as designated and allocated by Plaintiffs' Counsel and communicated confidentially to the Administrator.

8.      <u>Release of PAGA Claims.</u>

(a)      In consideration for the promises and payments provided for in this Agreement, Plaintiff, all PAGA Members, and the State of California shall be deemed to have fully, finally, and forever waived, released, relinquished, and discharged CSXIT, its parent company, subsidiaries, affiliates, agents, insurers, officers, directors, and employees (in their individual and/or official capacities) (hereinafter all referred to as the "Released Parties") from any and all PAGA claims that Temblador asserted or could have asserted in the PAGA Letter or in the *Valadez* Action asserting claims for penalties under the PAGA in connection with the *Valadez* Action.

(b)      Plaintiff acknowledges and understands that he has the right under federal law to certain protections for cooperating with or reporting legal violations to the Securities and Exchange Commission (the "SEC") and/or its Office of the Whistleblower, as well as certain other governmental entities and self-regulatory organizations. As such, nothing in this Section, or any other Section of this Agreement, should be construed to prohibit or limit Plaintiff from voluntarily communicating, without notice to or approval by CSXIT, with any government agency regarding a potential violation of any law or regulation. CSXIT may not retaliate against Plaintiff for any of these activities, and nothing in this Agreement or otherwise requires Plaintiff to waive any whistleblower monetary award or other payment that he might become entitled to from the SEC or any other governmental entity or self-regulatory organization. Nothing in this Agreement or otherwise prohibits Plaintiff from notifying CSXIT that he is going to make a report or disclosure to law enforcement.

9.    Non-Admission.

Plaintiff acknowledges that this Agreement and the payments and promises referenced in this Agreement are not an admission by the Released Parties of any liability or violation of any law or regulation. The Released Parties expressly deny any such liability or such alleged violation. Nothing contained in this Agreement may be used or construed by any person as an admission of liability by the Released Parties.

10.    Confidentiality.

Plaintiff agrees that neither Plaintiff nor Plaintiffs' Counsel shall disclose or cause to be disclosed the settlement terms reflected in this Agreement, including the fact that a settlement was reached in the *Valadez, Goyal, Ledesma* and *Briceno* Actions, as well as any negotiations leading up to settlement, and that Plaintiff and Plaintiffs' Counsel shall keep such information strictly confidential, excepting only any settlement terms that are disclosed in the public record in connection with the documents presented to the Court to obtain approval of the settlement of the PAGA Claim in the *Valadez* Action. In seeking approval of the PAGA Settlement, Plaintiff is authorized to orally disclose to the Court, if requested by the Court, the total amount of consideration to be paid by CSXIT in exchange for settlement of all claims in the *Valadez, Goyal, Ledesma* and *Briceno* Actions. Notwithstanding the foregoing, Plaintiff may disclose the amount that Plaintiff received in consideration for this Agreement and the characterization of that consideration to Plaintiff's spouse, accountant and/or financial or tax advisor, each of whom must be instructed by Plaintiff to hold the information in the strictest confidence. Plaintiff may also disclose information otherwise subject to this confidentiality provision to the extent such disclosure is compelled by law or compulsory legal process. If Plaintiff is compelled to make such a disclosure, Plaintiff shall provide fourteen (14) days' notice to CSXIT in advance of making such disclosure. Neither this provision nor any other part of this Agreement is intended to or shall prevent, impede, or interfere with Plaintiff providing truthful testimony and information in the course of an investigation or proceeding authorized by law and conducted by an agency of the United States.

11.    Governing Law.

This Agreement shall be governed by the laws of the State of California, without regard to conflict of laws principles, except to the extent governed by federal law.

12.    Counterparts/Electronic Signature.

This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective binding agreement upon the party that signed it. The Parties agree that this Agreement may be executed electronically by the Parties via DocuSign, provided that (i) the Agreement is transmitted to Plaintiff via DocuSign with an access code that will be separately communicated to Plaintiff by Plaintiff's counsel; and (ii) such electronic signature and the process for obtaining the electronic signature otherwise complies with the federal Electronic Signatures in Global and National Commerce Act (15 U.S.C. § 7001 et seq.) and California Civil Code § 1633.2. The Parties agree that an electronic

signature obtained via DocuSign pursuant to this Agreement shall be legally enforceable; shall be evidence of the signatory Party's intent to execute this Agreement and to be bound by its terms; and shall be effective as delivery of a manually executed counterpart of this Agreement.

13.   <u>Severability</u>.

If for any reason any provision of this Agreement is determined to be invalid, unenforceable, or contrary to any existing or future law to any extent, such provision shall be enforced to the extent permissible under the law and such invalidity, unenforceability, or illegality shall not impair the operation of or otherwise affect those portions of this Agreement which are valid, enforceable, and legal.

14.   <u>Complete Agreement</u>.

This Agreement constitutes the complete, exclusive, and final statement of the terms and conditions of the Agreement between the parties, superseding all prior negotiations, written or oral. This Agreement is not precedential and will not be cited in any proceeding, except a proceeding seeking enforcement of this Agreement.

15.   <u>Voluntary Agreement</u>. PLAINTIFF SIGNING BELOW ACKNOWLEDGES THAT HE HAS READ THE FOREGOING AGREEMENT AND ACCEPTS AND AGREES TO ALL OF ITS TERMS, AND EXECUTES THIS AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES.

*Signature Page Follows*

AGREED AND ACKNOWLEDGED ON THE DATES SET FORTH BELOW:


_Eleaquin T_
—4BA22314A4024DF—
Eleaquin Temblador                                    Date: 2/24/2020
                                                           _____


_____                                Date: _____
Marcelo J. Estrada
General Manager, Intermodal Ops.
CSX Intermodal Terminals, Inc.


*Approved as to form:*
_Aaron Kaufmann_
—2EF947E855704D5—
Aaron Kaufmann                                         Date: 2/24/2020
David Pogrel                                                _____
Attorneys for Plaintiff
_Cullen, Paul_
—8D00208344CF403—
Paul Cullen                                            Date: 2/24/2020
Attorneys for Plaintiff                                    _____


_____                                Date: _____
Matthew Lampe
Amanda Sommerfeld
Allison Crow
JONES DAY
Attorneys for CSXIT

9 of 9

AGREED AND ACKNOWLEDGED ON THE DATES SET FORTH BELOW:

_____        Date: _____
Eleaquin Temblador

Marcelo J. Estrada                      Date: 3/4/20
General Manager, Intermodal Ops.
CSX Intermodal Terminals, Inc.

*Approved as to form:*

_____        Date: 3/4/2020
Aaron Kaufmann
David Pogrel
Attorneys for Plaintiff

_____        Date: _____
Paul Cullen
Attorneys for Plaintiff

_____        Date: 3/4/2020
Matthew Lampe
Amanda Sommerfeld
Allison Crow
JONES DAY
Attorneys for CSXIT

**9 of 9**

**Notice of Settlement - Court-Approved Communication**

**Please Read Carefully**

**CHECK ENCLOSED**

Dear _____:

This letter notifies you about the settlement of a claim under the California Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code §2698 *et. seq.,* in a lawsuit that was filed against CSX Intermodal Terminals, Inc. ("CSXIT") by a former CSXIT owner-operator drayage driver Eleaquin Temblador ("Plaintiff" or "Mr. Temblador").  The lawsuit is entitled *Valadez, et. al. v. CSX Intermodal Transport,* Case No. 3:15-cv-05433-AGT, pending in the Northern District of California (the "Lawsuit").

**IMPORTANT: A payment check is enclosed for you with this letter.  You must deposit no later than _____, 2020 or the check will become void.**

Although you are not a direct party to the PAGA claim in this lawsuit, you are receiving this letter and payment check because you have been identified by CSXIT as an individual who was a signatory to a Contractor Operating and Lease Agreement with CSXIT under which you personally provided drayage services as an owner-operator in California between October 5, 2015 and September 15, 2016.

> **1.      The Lawsuit**

In the Lawsuit, Mr. Temblador and other Plaintiffs allege that CSXIT violated California law by misclassifying Drivers as "Independent Contractors."  The PAGA claim in this case is one of several related claims against CSXIT.  CSXIT contends that its classification of Drivers was always lawful and the company denies that it violated any of the Drivers' legal rights.

Plaintiff Temblador asserted a representative claim against CSXIT under PAGA to recover *civil penalties* on behalf of the State of California and other similarly situated individuals who were signatories to Contractor Operating and Lease Agreements with CSXIT under which they personally provided drayage services as an owner-operator in California at any time between October 5, 2015 and September 15, 2016 (referred to here as the "PAGA Members.")

The Court has not issued a ruling in this case in favor of Plaintiff or in favor of CSXIT. Mr. Temblador thinks that he would have won at trial; while CSXIT thinks that it would have won, and that Mr. Temblador would not have established that he or any other Driver was improperly classified as an Independent Contractor, or that any Drivers were entitled to damages or payments.  Both sides agreed that it is in the best interests of the parties, including all of the Drivers whom Mr. Temblador represents in the Lawsuit, to reach a settlement to avoid the cost, delay, and risks of a trial.

The Court in this case has determined that the settlement of the representative PAGA claim for civil penalties for which you are receiving the enclosed payment (which is described in Section 2 below) is fair and reasonable.

### 2.      The Terms of the PAGA Settlement

The settlement provides for the creation of a $80,000 common fund (referred to here as the "PAGA Settlement Amount") for the benefit of the State of California's Labor and Workforce Development Agency ("LWDA") and Drivers who are represented by Mr. Temblador in his PAGA claim in the Lawsuit (these represented Drivers are referred to in this letter as "PAGA Members").  Out of the PAGA Settlement Amount, the *net* settlement proceeds total $50,000. By law, 75% of these net settlement proceeds ($37,500) must be paid to the California LWDA, and 25% ($12,500) will be distributed and paid to the PAGA Members (including you) for civil penalties.  Out of the remainder of the PAGA Settlement Amount, $5,000 will be paid to a settlement administrator for its services administering this settlement; and $25,000 will be paid in expenses and fees to the lawyers who represented Mr. Temblador and the PAGA Members on a "contingency" basis.

In exchange for the above settlement amounts, Plaintiff has signed a *limited release of liability* on your behalf.  The release is described below in Section 6 and a full copy is available to you.

### 3.      Who is Eligible to Receive Payments from the PAGA Settlement Amount?

To be eligible for a settlement payment, you must have performed drayage driving services as an owner-operator for CSXIT under your own Contractor Operating and Lease Agreement ("COLA")/vendor number within the State of California at any time between October 5, 2015 and September 15, 2016.

### 4.      What is the Estimated Amount of Your Settlement Payment?

The $12,500 portion of the PAGA Settlement Amount that is being distributed to PAGA Members has been divided in *pro-rata* shares among you and the other PAGA Members.  The size of your share depends on how many weeks you provided drayage driving services to CSXIT between October 5, 2015 and September 15, 2016 (the "Service Period").

According to CSXIT's records, you drove ____ weeks between October 5, 2015 and September 15, 2016.  Under the terms of the settlement, you are therefore entitled to $____.  That amount is reflected in the enclosed check.

### 5.      Tax Requirements

The payment to you is classified as non-wage income and reported on a form IRS 1099 to the extent required by law.  That form is also included with this letter.  **You are responsible for paying any applicable taxes on all amounts received pursuant to this settlement**.  You should contact your tax preparer if you have any questions, as neither Plaintiff's lawyers nor CSXIT is in a positon to provide you with tax-related advice.

6.      **The Scope of the Limited Release**

The release of the PAGA claim (i.e., what you give up in exchange for this payment) releases CSXIT and its affiliates (its parent, subsidiaries, affiliates, agents, insurers, officers, directors, and employees) from liability for any and all claims for PAGA civil penalties related to the alleged unlawful classification of Drivers as independent contractors, or which could have been asserted by Mr. Temblador.  To the extent an alleged PAGA violation arises from the operative facts pled in the complaint in the Lawsuit and implicates the same primary rights and defenses being settled here, those claims are settled and released to the fullest extent permitted under applicable law.

The Limited Release *does not* release CSXIT from liability to, or waive any claims possessed by, you against CSXIT for violations of the federal Fair Labor Standards Act, the California Labor Code, or any other provision of federal or state statutory or common law *other than PAGA*.

This is only a summary of the release. For a complete copy, you may contact the Settlement Administrator, Simpluris. (contact information listed below).

7.      **Getting More Information**

This notice summarizes the terms of the settlement of the PAGA claim.  The full details are set forth in the written Private Attorneys General Act Settlement Agreement.  You can get a copy of that Agreement by contacting the Settlement Administrator, Simpluris.  You may also contact the Settlement Administrator for more information about the settlement.

The Settlement Administrator's contact information is:



[   ]